COOLIDGE ET AL., TRUSTEES, *v.* LONG, COMMISSIONER OF CORPORATIONS AND TAXATION OF MASSACHUSETTS.

Nos. 33 and 34. Argued December 8, 1930.—Decided February 24, 1931.

*Mr. Robert G. Dodge,* with whom *Mr. Harold S. Davis* was on the brief, for appellants.

586

588

*Mr. James S. Eastham,* Special Assistant Attorney General of Massachusetts, with whom *Mr. Joseph E. Warner,* Attorney General, was on the brief, for appellee.

590

Mr. Justice Butler delivered the opinion of the Court.

Each of these appeals brings here for review a decree of the probate court of Norfolk county, Massachusetts, entered in accordance with a rescript from the supreme judicial court of the Commonwealth. 268 Mass. 443; 167 N. E. 757. In each appellants presented to the probate court an application for the abatement of an inheritance tax assessed under § 1, c. 65, General Laws. There was drawn in question the validity of the statute on the ground of its being repugnant to the contract clause of the Federal Constitution and the due process and equal protection clauses of the Fourteenth Amendment. The probate court reserved for the consideration of the supreme judicial court all questions of law and the matter of what decrees should be entered. That court held the statute valid and sustained the taxes.

The opinion states the facts as follows:

"The petitioners [appellants here] are trustees, under a deed and declaration of trust executed on July 29, 1907, by J. Randolph Coolidge and Julia Coolidge and the petitioners.

"By that deed a large amount of real and personal estate was transferred to the trustees by the settlors voluntarily and not as a bona fide purchase for full consideration in money or in money's worth. The trustees were given extensive powers of management, investment and reinvestment with the right to determine finally what receipts and payments should be credited to income or principal. The part of the trust fund furnished by J. Randolph Coolidge was four-sevenths, and the part furnished by Julia Coolidge was three-sevenths.

"By the terms of the trust the income was to be paid in these proportions to each of the settlors during their joint lives and then the entire income to the survivor, and,

upon the death of the survivor, the principal was to be divided equally among their five sons, provided that, if any of the sons should predecease the survivor of the settlors, his share should go to those entitled to take his intestate property under the statute of distributions in force at the death of such survivor, with a further provision to the effect that in no event should a widow of such deceased son take as distributee more than half of such share.

"There was in the declaration of trust no power of revocation or modification or termination prior to the death of the survivor of the settlors. *Coolidge* v. *Loring,* 235 Mass. 220.

"By instrument executed on April 6, 1917, the settlors assigned their interest in the trust to the five sons, all of whom eventually survived the termination of the trust.

"Julia Coolidge died in January, 1921, and J. Randolph Coolidge on November 10, 1925, both being residents of this Commonwealth.

"The defendant determined that the petitioners were subject to excise taxes under G. L. c. 65, § 1, as amended, upon the four-sevenths and upon the three-sevenths of the trust estate furnished respectively by each settlor as of November 10, 1925."

When the declaration of trust was executed, no statute was in effect under which the succession to the trust property could have been subjected to this tax. The statutes then in force provided for the imposition of an excise only where the succession was to collateral relatives and strangers. The first relevant statute was approved June 27, 1907 (St. 1907, c. 563) and took effect September 1, about five weeks after the date of the declaration of the trust. It did not apply to property passing by deed, grant, sale or gift made prior to its effective date. But by § 3, c. 678, St. 1912, it was made applicable "to all property passing by deed, grant or gift . . . made or intended to

take effect in possession or enjoyment after the death of the grantor or donor, if such death occurs subsequent to the passage hereof." And see § 1, c. 563, St. 1914.

Chapter 65, General Laws, effective since January 1, 1921, provides:

§ 1. "All property within the jurisdiction of the commonwealth . . . which shall pass by . . . deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth . . . made or intended to take effect in possession or enjoyment after his [grantor's] death . . . to any person, absolutely or in trust, . . . shall be subject to a tax. . . ."

§ 36. " This chapter shall apply only to property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty . . ."

The supreme judicial court sustained the exaction as an excise. It held that possession or enjoyment upon the death of the survivor of the settlors was a taxable commodity under the statute enacted after the creation of the trust.

The trust deeds are contracts within the meaning of the contract clause of the Federal Constitution. They were fully executed before the taking effect of the state law under which the excise is claimed. The Commonwealth was without authority by subsequent legislation, whether enacted under the guise of its power to tax or otherwise, to alter their effect or to impair or destroy rights which had vested under them. *Appleby* v. *City of New York*, 271 U. S. 364. *Fletcher* v. *Peck*, 6 Cranch 87, 136. *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 624, 656. *Farrington* v. *Tennessee*, 95 U. S. 679, 683. *Carondelet Canal Co.* v. *Louisiana*, 233 U. S. 362, 373, 378.

This court has held that the Revenue Act of 1914, §§ 319–324, in so far as it undertook to impose a tax on gifts fully consummated before its provisions came before

Congress (*Blodgett* v. *Holden,* 275 U. S. 142) or before its passage (*Untermyer* v. *Anderson,* 276 U. S. 440) was arbitrary and repugnant to the due process clause of the Fifth Amendment. In *Nichols* v. *Coolidge,* 274 U. S. 531, we considered the trust deed of Mrs. Coolidge that is now before us. The question in that case was whether the value of the property so conveyed prior to the enactment should be included in her estate for the purpose of ascertaining the federal estate tax thereon. We said (p. 542):

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R.,* 240 U. S. 1, 24; *Barclay & Co.* v. *Edwards,* 267 U. S. 442, 450. See also *Knowlton* v. *Moore,* 178 U. S. 41, 77. And we must conclude that section 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation."

See *Levy* v. *Wardell,* 258 U. S. 542, 544. The States are similarly restrained by the due process clause of the Fourteenth Amendment.

In its opinion, the state court suggests that the federal estate tax was upon property of the deceased transferred at his death and that it was levied upon a subject "quite different from the succession to property by a beneficiary, which is the subject of the present excise." Undoubtedly the State has power to lay such an excise upon property so passing after the taking effect of the taxing Act. The fundamental question here is whether rights had so vested prior to the taking effect of the tax statute that there was thereafter no occasion in respect of which the excise might constitutionally be imposed. The state court held that

the succession was not complete until the death of the survivor of the grantors and that therefore the tax is valid. It is well understood that, when the jurisdiction of this court is invoked to determine whether a state law impairs the rights of the litigant under a prior contract, or whether the State is depriving him of his property without due process of law in violation of the Fourteenth Amendment and the question turns upon the existence or terms of a contract, this court is bound to determine for itself whether there is a contract and to ascertain its true meaning and effect. That rule is necessary in order that this court may properly enforce these provisions of the Constitution. *Railroad Commission* v. *Eastern Texas R. Co.*, 264 U. S. 79, 86, and cases cited.

By the deed of each grantor one-fifth of the remainder was immediately vested in each of the sons subject to be divested only by his death before the death of the survivor of the settlors. It was a grant *in praesenti* to be possessed and enjoyed by the sons upon the death of such survivor. *Blanchard* v. *Blanchard*, 1 Allen 223. *Clarke* v. *Fay*, 205 Mass. 228. *McArthur* v. *Scott*, 113 U. S. 340, 379, and cases cited. And see *United States* v. *Fidelity Trust Co.*, 222 U. S. 158. *Henry* v. *United States*, 251 U. S. 393. The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment. The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. *Coolidge* v. *Loring, supra*, 223. Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. *Knowlton* v. *Moore*, 178 U. S. 41, 56. Nothing moved from her or him or from the estates of either when she or he died. There was no transmission

then. The rights of the remaindermen, including posses-
sion and enjoyment upon the termination of the trusts,
were derived solely from the deeds. The situation would
have been precisely the same if the possibility of divest-
ment had been made to cease upon the death of a third
person instead of upon the death of the survivor of the
settlors. The succession, when the time came, did not
depend upon any permission or grant of the Common-
wealth. While the sons if occasion should arise might by
appropriate suit require the trustees to account, it is to
be borne in mind that the property was never in the
custody of the law or of any court. Resort might be had
to the law to enforce the rights that had vested. But the
Commonwealth was powerless to condition possession or
enjoyment of what had been conveyed to them by the
deeds. *Barnitz* v. *Beverly,* 163 U. S. 118, and cases cited.

The fact that each son was liable to be divested of the
remainder by his own death before that of the survivor
of the grantors does not render the succession incomplete.
The vesting of actual possession and enjoyment depended
upon an event which must inevitably happen by the efflux
of time, and nothing but his failure to survive the settlors
could prevent it. *Blanchard* v. *Blanchard, supra. Moore*
v. *Lyons,* 25 Wend. 119, 144. Succession is effected as
completely by a transfer of a life estate to one and re-
mainder over to another as by a transfer in fee. *Rein-
ecke* v. *Northern Trust Co.,* 278 U. S. 339, 347–348. The
recent case of *Saltonstall* v. *Saltonstall,* 276 U. S. 260,
furnishes a good illustration of incomplete succession.
There the remainder was liable at any time during the
settlor's life to be divested through the exertion of the
power of alteration and revocation that was reserved in
the instrument creating the trust. The decision sus-
taining a transfer tax went upon the ground that " the gift
taxed is . . . one which never passed to the beneficiaries
beyond recall until the death of the donor. . . . A

power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. . . . The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another." P. 271. See also *Chase Nat. Bank* v. *United States*, 278 U. S. 327, 335, 338.

No Act of Congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment.

*Tyler* v. *United States*, 281 U. S. 497, held constitutional §§ 201 and 202 of the Revenue Acts of 1916, 39 Stat. 756, 777–778, and of 1921, 42 Stat. 227, 277–278, which included in the gross estate the value of an interest held by decedent and any other person as tenants by the entirety. In each case, the estate was created after the passage of the applicable Act; and none of the property constituting it had prior to its creation ever belonged to the surviving spouse. The court held that the Acts did not impose a direct tax because, putting aside a common law fiction and having regard to substance, the death of one of the parties was in fact the generating source of important and definite accessions to the property rights of the other. It held that the provisions were intended to prevent an avoidance of the estate tax by the creation of such tenancies and were obviously neither arbitrary nor capricious and so not violative of the Fifth Amendment.

*Clapp* v. *Mason*, 94 U. S. 589, and *Mason* v. *Sargent*, 104 U. S. 689, arose under the succession tax Act of June 30, 1864, §§ 124 *et seq.*, 13 Stat. 285. *Vanderbilt* v. *Eidman*, 196 U. S. 480, and *Hertz* v. *Woodman*, 218 U. S. 205, arose under a similar Act of June 13, 1898, §§ 29 and 30, 30 Stat. 464. In all these cases, the property vested in interest after the Acts took effect, and the decisions went on the ground that the right to impose the excises did not accrue until the subsequent vesting in possession and enjoyment. Under these Acts, the mere

passage of title was not sufficient; possession and enjoyment were also required. *Wright* v. *Blakeslee,* 101 U. S. 174, 177, went upon the ground that, up to the moment of the life tenant's death, "her children had no interest in the land except a bare contingent remainder expectant upon her death and their surviving her. At her death, it came to them as an estate in fee in possession absolute."

This court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment.

In *Cahen* v. *Brewster,* 203 U. S. 543, the testator died May 26, 1904, the will was probated May 30, and a special inheritance tax law was passed June 28. It imposed a tax upon all inheritances and legacies, and provided that the tax should not be enforced when the property had borne its just proportion of taxes prior to the time of the inheritance and that the tax should be collected on all successions not finally closed. The enactment was assailed as repugnant to the due process and equal protection clauses of the Fourteenth Amendment. This court held that the State, without unconstitutional deprivation, could exercise its power to impose inheritance taxes at any time while it holds the property from the legatee, p. 551; and, dealing with the contention that taxing successions not closed and exempting those that had been closed operated to deny equal protection, the court said (p. 552): "It was certainly not improper classification to make the tax depend upon a fact without which it would not have been valid." As the court said in *United States* v. *Jones,* 236 U. S. 106, 112, "It hardly needs statement that personal property does not pass directly from a decedent to legatees or distributees, but goes primarily to the executor or administrator, who is to apply it, so far as may be necessary, in paying debts

of the deceased and expenses of administration, and is then to pass the residue, if any, to legatees or distributees." See also *Carpenter* v. *Pennsylvania*, 17 How. 456, 462.

In *Moffitt* v. *Kelly*, 218 U. S. 400, Moffitt married in California in 1863 and resided there with his wife until his death in 1906. By his will, he gave to her and their children as if he had died intestate. A state law passed in 1905 imposed a tax upon property so descending. The state court sustained the tax upon the wife's share in the community property. This court held that the nature and character of her right was a local question and that the tax was not violative of the contract clause of the Constitution or the due process or equal protection clause of the Fourteenth Amendment. In *United States* v. *Robbins*, 269 U. S. 315, this court considered the character of the wife's estate during the existence of the community, and said (p. 326): "We can see no sufficient reason to doubt that the settled opinion of the Supreme Court of California, at least with reference to the time before the later statutes, is that the wife had a mere expectancy while living with her husband. The latest decision that we have seen dealing directly with the matter explicitly takes that view, says that it is a rule of property that has been settled for more than sixty years . . ." See also *Poe* v. *Seaborn*, 282 U. S. 101, 116. Cf. *Nickel* v. *Cole*, 256 U. S. 222, 225.

*Chanler* v. *Kelsey*, 205 U. S. 466, arose under the New York inheritance tax law of 1897. Prior to its enactment, a father conveyed property to trustees to pay the income to his daughter for life with remainder to her issue in fee or in default of issue to her heirs in fee, and gave her power by will to appoint the remainder among her issue or heirs in such manner and proportions as she might determine. She died in 1902 and by her will exercised the power. The tax law deemed such appointment a transfer and made it taxable. It was attacked as repugnant to the

due process clause of the Fourteenth Amendment and the contract clause. This court held that without such appointment the estates in remainder would have gone to all in the class named in the deeds; that, by the exercise of the power, some were divested of their estates and the same were vested in others, and that it was only on the exercise of the power that the estates of the appointees became complete. And it sustained the tax. Justices Holmes and Moody, dissenting, insisted that the succession was complete when the father's deeds took effect, and that " the execution of the power did not depend in any way upon the continued coöperation of the laws of New York by way of permission or grant." P. 481.

The overwhelming weight of authority sustains the conclusion that the succession in the present case was complete when the deed took effect.

In *Matter of Pell,* 171 N. Y. 48, the testator's will gave a life estate in his property to his widow with remainders over at her death to his nephews and nieces and the issue of any deceased nephew or niece together with a share to his sister. He died in 1863. The life tenant died December 20, 1899, and at that time all the estates in remainder came into actual possession and enjoyment of the beneficiaries. The Act of March 10, 1899 (c. 76, Laws of that year) provided:

"All estates upon remainder . . . which vested prior to June 30th, 1885, but which will not come into actual possession or enjoyment of the person . . . beneficially interested therein until after the passage of this act, shall be appraised and taxed as soon as the person . . . beneficially interested therein shall be entitled to the actual possession or enjoyment thereof."

The court said (p. 55):

" This court and the Supreme Court of the United States have held in numerous cases that the transfer tax is not imposed upon property, but upon the right of suc-

cession. It, therefore, follows that where there was a complete vesting of a residuary estate before the enactment of the transfer tax statute, it cannot be reached by that form of taxation. In the case before us it is an undisputed fact that these remainders had vested in 1863, and the only contingency leading to·their divesting was the death of a remainderman in the lifetime of the life tenant, in which event the children of the one so dying would be substituted. If these estates in remainder were vested prior to the enactment of the Transfer Tax Act there could be in no legal sense a transfer of the property at the time of possession and enjoyment. This being so, to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract and take private property for public use without compensation."

*Matter of Craig,* 97 App. Div. 289 (affirmed, 181 N. Y. 551), involved a similar state of facts. The court said (p. 296):

" The underlying principle which supports the tax is that such right [the right of succession] is not a natural one but is in fact a privilege only, and that the authority conferring the privilege may impose conditions upon its exercise. But when the privilege has ripened into a right it is too late to impose conditions of the character in question, and when the right is conferred by a lawfully executed grant or contract it is property and not privilege, and as such is protected from legislative encroachment by constitutional guaranties."

In *Hunt* v. *Wicht,* 174 Cal. 205, the court held that a deed delivered by grantor to a third person in escrow to be delivered to grantee on the death of the grantor passed a present title to the grantee, the grantor retaining only a life estate; and that the legislature was without power subsequently to impose a succession tax accruing at the termination of the grantor's life estate, simply because the

grantee was during the intervening life estate without immediate possession of the property conveyed. The court said (p. 209): " It is the vesting in interest that constitutes the succession, and the question of liability to such a tax must be determined by the law in force at that time. . . . What we have said appears perfectly clear on principle, and is sustained by practically all of the authorities in other states where the question has arisen."

In *Lacey* v. *State Treasurer,* 152 Iowa 477, a contract created a vested interest in real estate subject only to postponement of the right of possession and enjoyment until the death of the grantor. The court held that there was a transfer of a present interest and that its character was not affected by a condition therein, that might subsequently reduce the share of each grantee. It was also held (pp. 483–484):

"Even though the remainder is so far conditional that it may have to be opened up to let in afterborn children, and, on the other hand, may be divested by death without issue of the person named, nevertheless it constitutes a vested interest, not subject to a subsequent collateral inheritance tax statute, passed before the termination of the life estate. *In re Seaman,* 147 N. Y. 69. Any attempted legislation imposing a collateral inheritance tax upon interests in remainder, which have become vested by the taking effect of the will creating them, would be unconstitutional. *In re Pell,* 171 N. Y. 48."

In *Houston's Estate,* 276 Pa. 330, a deed irrevocably conveyed property in trust to pay income to the settlor for life and at her death to a remainderman. The statute then in force imposed a five per cent. tax on transfers intended to take effect in possession or enjoyment at or after death. The life tenant died after the taking effect of legislation which increased the rate to ten per cent. The court held the estate passing to the remainderman

taxable at five per cent and not at the higher rate fixed by the later statute. The opinion of the Orphans' Court, adopted by the Supreme Court, said (p. 331):

"Nor can it be successfully argued that the tax is not on the transfer of title to the property, but on the transfer of enjoyment, for, as it seems to us, the act means by this the right of enjoyment, and this was vested under the deed. If the tax is imposed when enjoyment is perfected by actual possession, and this theory is carried to its logical conclusion, it would seem that if, during the administration of an estate, delays occur, as they necessarily must, and if, before actual distribution is made, the rate of taxation is changed, a legacy would be taxed at the changed rate, which would appear to be a *reductio ad absurdum.*"

In *State ex rel. Tozer* v. *Probate Court,* 102 Minn. 268, an owner of much property organized a corporation and, his wife joining, conveyed practically all to the corporation. It issued its shares to him and he gave one-third to her. Then they transferred the stock to their four children who leased two-thirds to the father for his life and one-third to the mother for her life. The father died in 1905 after the taking effect of an inheritance tax law enacted in that year. The court held that the leases vested in each parent a life estate in the stock and reserved to the children estates in reversion which were beyond the control of the life tenants; and that the interests of the children vested when the leases were made, came into possession upon the termination of the life estates and that the inheritance tax could not be collected thereon. See also *Commonwealth* v. *Wellford,* 114 Va. 372.

We conclude that the succession was complete when the trust deeds of Mr. and Mrs. Coolidge took effect and that the enforcement of the statute imposing the excise in question would be repugnant to the contract clause of the Constitution and the due process clause of the Four-

teenth Amendment. We need not consider whether it would also conflict with the equal protection clause.

*Reversed.*

MR. JUSTICE ROBERTS, dissenting:

The Supreme Judicial Court of Massachusetts has construed and applied the statute as one taxing the taking of possession of property by a remainderman whose interest, acquired before the death of the donor, vested in possession and enjoyment, and free of a contingent gift over, on the donor's death. That court said:

"The . . . statute . . . is designed to include within its sweep all methods of succession to property to take effect in possession or enjoyment after the death of the grantor or donor . . . Whenever property is conveyed upon such limitation that it will vest in interest, possession or enjoyment by reason of the death of the grantor or donor, such succession falls within the descriptive words of the statute. The succession to any of these attributes of property occurring as the result of the death of the grantor or donor constitutes the taxable commodity."

And also said:

"The tax authorized by the statutes is a tax upon 'succession,' which includes the 'privileges enjoyed by the beneficiary of succeeding to the possession and enjoyment of property.' . . .

"The present tax is not laid on the donor, but on the beneficiary; the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor . . . So long as the privilege of succession has not been fully exercised it may be reached by the tax."

We are bound by the state court's determination as to the meaning of the statute, *Nickel* v. *Cole*, 256 U. S. 222; *Saltonstall* v. *Saltonstall*, 276 U. S. 260; and its applica-

tion, *Stebbins* v. *Riley,* 268 U. S. 137; *Cahen* v. *Brewster,* 203 U. S. 543; *Saltonstall* v. *Saltonstall, supra.*

The application of the statute, thus defined, is held by this Court to be a denial of due process, and an impairment of the obligation of a contract, on the sole ground that the remainder vested before the adoption of the taxing statute, although the enjoyment in possession of the property, and the termination of the possibility of the contingent gift over, both followed its enactment.[1]

---

[1] The importance of the question is shown by the fact that forty-one states and territories have statutes containing provisions substantially similar to those of the Massachusetts acts involved in this appeal. Alaska, c. 60, S. L. 1919. Arizona, c. 26, 26A, S. L. 1922. Arkansas, Act 106, p. 526, Laws 1929. California, c. 821, Laws 1921, § 2; c. 844, Laws 1929, § 2. Colorado, c. 144, S. L. 1921, § 2; c. 114, S. L. 1927, § 2. Connecticut, c. 190, P. A. 1923, § 1; c. 209, P. A. 1929, § 2 (d). Delaware, c. 6, R. C. 1915; 29 Del. Laws, c. 7, Laws 1917; 36 Del. Laws, c. 7, Laws 1929. Hawaii, c. 96, Rev. Laws 1915, § 1323; Act 223, S. L. 1917; Act 195, S. L. 1923. Idaho, c. 148, Comp. St. 1919, § 3371; c. 243, S. L. 1929. Illinois, Laws 1909, p. 311; Smith-Hurd (1929), c. 120, § 375, p. 2436. Indiana, c. 65, Acts 1929, p. 186. Iowa, c. 351, § 7307, Code 1927. Kansas, c. 79, Art. 15, R. S. 1923. Kentucky, Art. XIX, § 4281a–1 (Carr. Ky. Stat. 1930). Maine, c. 266, Laws 1917; c. 187, Laws 1919. Michigan, Act No. 188, Laws 1899; Act No. 380, P. A. 1925. Minnesota, § 2292, *et seq.,* 1927 Minn. Stat. (Mason), Vol. 1. Mississippi, c. 134, G. L. 1924, § 5 (f). Missouri, Art. XXI, § 558 *et seq.,* R. S. 1919. Montana, c. 57, § 10377.1, C. C. P. (1927). Nebraska, Art. 22, c. 77, § 2201, Comp. Stat. 1929. New Hampshire, c. 73; P. L. 1925. New Jersey, c. 228, Laws 1909; c. 144, Laws 1929. New York, c. 61, § 249–b, Cons. L. 1930. North Carolina, c. 101, P. L. 1925; c. 80, P. L. 1927. North Dakota, c. 267, Laws 1927. Ohio, § 5331, Gen. Code. Oklahoma, c. 84, Art. XVIII, § 9856, Comp. St. 1921. Oregon, c. VI, § 10–601, Ann. Code 1930. Pennsylvania, Act May 6, 1887, P. L. 79; Act June 20, 1919, P. L. 521. Rhode Island, c. 1339, P. L. 1916; c. 2311, P. L. 1923; c. 1355, P. L. 1929. South Carolina, Acts 1922, p. 800; Acts 1925, p. 201. South Dakota, c. 11, § 6827, Comp. L. 1929 Tennessee, c. 46, P. A. 1919; c. 64, P. A. 1925. Texas, c. 5, Art. 7117, 1928 Stat. Utah, § 3185 Comp. L. 1917; c. 64, Laws 1919. Virginia, § 44 Code (App.) 1924; c. 45, Acts 1928, p.

This is to deny to the Commonwealth the power to distinguish, in laying its tax, between the vesting of a defeasible future interest which carries to the beneficiary no assurance of future possession or enjoyment, and the later vesting of that interest by death in possession and enjoyment of the tangible property, without possibility of being divested. It is to assert that the succession is so complete upon the mere creation of the future interest that the State must tax the future estate when that interest comes into being, or thereafter abstain entirely from taxing it.

This position seems to me untenable. It is founded on the premise that the only privilege enjoyed by the holder of a future interest in property is the dry legal abstraction of owning that particular interest—that if it vested years ago, to tax the owner later, on the occasion of his coming into actual possession, control and enjoyment of the property, is in fact to tax him presently for the exercise of a privilege long since enjoyed.

In weighing the argument it is essential that the nature of the challenged tax be kept clearly in mind.

Excises laid in respect of the privilege of transmitting property rights at death, and those laid on the correlative privilege of acquiring the same rights, are common. The phrases " transfer," " estate " and " succession " taxes, and " death duties," are somewhat indiscriminately used to designate the two wholly different forms of tax. It will tend to clarity to employ the more usual phraseology and refer hereafter to the excise on the privilege of transmission as a transfer tax, and that on the privilege of reception as a succession tax.[2]

---

35; Tax Code, c. 9, § 98. Washington, § 7051, Pierce 1929 Code. West Virginia, c. 33 Barnes Code 1923; c. 57, Acts 1929. Wisconsin, c. 72, Stat. 1923; c. 237, Stat. 1925. Wyoming, c. 78, S. L. 1925.

[2] Both transfer and succession taxes have been imposed by the United States, the former by the existing estate tax law, the latter by the Act of 1864 (c. 173, §§ 124, 127; 13 Stat. 285, 287) and the Act of 1898 (c. 448, § 29; 30 Stat. 464).

Since no one has the natural right either to own property or to transfer it to others at his death, but derives the power so to do solely from the State, the sovereign may tax the owner for the privilege of transmission conferred by law. *United States* v. *Perkins,* 163 U. S. 625, 628. The right to receive and enjoy that which was formerly owned by another is similarly derived, and upon like principles the sovereign may tax the taker for the privilege accorded. *Mager* v. *Grima,* 8 How. 490, 494; *Plummer* v. *Coler,* 178 U. S. 115, 130–132. So distinct are these privileges that either or both may be taxed as respects the same property. *Stebbins* v. *Riley, supra; Saltonstall* v. *Saltonstall, supra.*

The one is collected on the transfer of his estate by a decedent; it taxes not that to which some person succeeds upon a death, but that which ceased by reason of death. *Nichols* v. *Coolidge,* 274 U. S. 531, 537; *Edwards* v. *Slocum,* 264 U. S. 61, 62. The other is laid on the right to become beneficially entitled to property on the death of its former owner. *Keeney* v. *New York,* 222 U. S. 525, 533; *Nichols* v. *Coolidge,* 274 U. S. at p. 541.

The latter type of excise has existed in Massachusetts for years, and the courts of that Commonwealth have consistently construed the statutes as they did in this case.[3]

Though the settlors' children took a vested interest by the delivery of the deed of trust in 1907, it was subject to be divested, as to any child, by his death prior to that of the survivor of the settlors. Until the parents died it could not be known whether a child ever would possess or enjoy the trust property. Until then he had none of the rights of an owner in fee. He could not obtain

---

[3] St. 1891, c. 425. St. 1907, c. 563. *Minot* v. *Winthrop,* 162 Mass. 113. *Callahan* v. *Woodbridge,* 171 Mass. 595. *Crocker* v. *Shaw,* 174 Mass. 266. *Attorney General* v. *Stone,* 209 Mass. 186. *Magee* v. *Commissioner of Corporations,* 256 Mass. 512.

possession; that was in the trustees. He could neither spend the income nor direct its expenditure; the provisions of the deed of trust governed these matters.

In 1917 the parents conveyed their life estates to the children. The latter, conceiving that this entitled them, as sole owners, to the possession and enjoyment of the property, demanded of the trustees delivery of the corpus. This was refused. The settlors then filed a bill to reform the trust instrument so that it should provide that by surrender of the parents' life interests to the children the trust should terminate. They alleged that it was the true intent of the parties that the contingent remainders in the next of kin of the children should not vest if the interest of the settlors was released previous to the death of the survivor, and that appropriate language to express this intent had by mistake been omitted from the deed. The court held that no case had been made for the reformation of the deed, and refused relief. The trust property remained in the control and under the administration of the trustees. *Coolidge* v. *Loring,* 235 Mass. 220.

The appellants, nevertheless, assert that while the children may have required the State's aid at the time of the delivery of the deed of trust, they never again had occasion to rely on the State's assistance; that the transfer to and into the beneficiaries was then complete; that they needed to do nothing more to become possessed of and enjoy their property; that merely to sit still and await the deaths of their parents did not constitute the doing of anything; that the vesting of their remainder interests in 1907 covers and includes its consequence, namely, their acquirement of tangible property and the enjoyment thereof at their parents' death. In short, appellants insist that the beneficiaries did not have to look to the laws of Massachusetts for the right of possession or enjoyment; and that consequently an alleged taxing of the

succession on the occasion of their acquiring such possession and enjoyment is but a thinly veiled attempt retroactively to tax the acquisition of an interest which vested in 1907.

But it is obvious that the children did rely on the law of Massachusetts for their right to receive the trust property from the trustees; and it might well have been they would have had to resort to her courts to obtain possession. All the law applicable to the administration of trusts, regulating the acts of trustees, giving remedies for trustees' defaults, providing for their compensation, and requiring the full execution of their fiduciary duties, was available to appellants. Without it their future interest, by way of remainder, might have been the merest shadow.

In spite of this, it is said that the succession is one and entire; that it must be taxed at its inception or not at all; that it is wholly out of the ordinary to tax it on the occasion of its fruition in possession; and that this Court has held the attempt so to do violative of the Constitution. The converse of these propositions is true. This Court has repeatedly approved the selection of the event of possession and enjoyment as the proper occasion for the imposition of an excise; and every applicable decision of the Court sustains the validity of the tax and supports the judgment of the Supreme Judicial Court of Massachusetts.

*First.* In laying succession taxes the United States has chosen as the occasion therefor not the acquirement of a mere technical legal interest in property, but the coming into actual possession and enjoyment; and this fact has been recognized by this Court.

By the act of June 30, 1864, § 124, a tax was imposed on legacies and distributive shares arising from personal property " . . . passing, after the passage of this act, from any person possessed of such property, either by

will or by the intestate laws . . . or any personal property or interest therein, transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor . . ."

Section 127 provided that "every past or future disposition of real estate by will, deed, or laws of descent, by reason whereof any person shall become beneficially entitled, in possession or expectancy, to any real estate, or the income thereof, upon the death of any person dying after the passage of this act," should constitute the person so taking a successor and make him liable to a tax.

In *Clapp* v. *Mason*, 94 U. S. 589, a testator, who died in 1867, devised real estate to his widow for life, with remainder to her children. She died in 1872, and the children's interests then took effect in enjoyment. The tax was assessed in 1873. It was paid under protest because the act of June 30, 1864, had been repealed by act of July 14, 1870, on all legacies and successions after August 1, 1870. In an action against the collector to recover the amount paid, he defended on the ground that the tax accrued on creation of the remainder in 1867. The devisees in remainder contended that it did not accrue until they came into possession, which was subsequent to the repeal of the taxing act. This Court held that the occasion of the tax was not the vesting of the remainder, but the coming into possession by the successor. The corollary seems clear enough that if a remainderman had died during the life estate the statute would not have justified a tax upon him measured by the clear value of the property in which he owned only a future interest.

The case was followed in *Mason* v. *Sargent*, 104 U. S. 689, which involved a trust of personal property created by the same will. Testator's daughter was entitled to the income of the trust for life, and on her death the

principal was to be paid to her children. It was held that no tax was due until the termination of the life trust, for until then the children had neither possession nor enjoyment.[4]

By act of June 13, 1898, c. 448, § 29 (30 Stat. 448, 464) an excise was imposed relating first to legacies or distributive shares passing by death and arising from personal property, and secondly to any personal property or interest therein transferred by deed, grant, bargain, sale or gift to take effect in possession or enjoyment after the death of the grantor or bargainor, in favor of any person or persons, in trust or otherwise. In *Vanderbilt* v. *Eidman,* 196 U. S. 480, 492, this Court said:

"As to this second class, the statute specifically makes the liability for taxation depend, not upon the mere vesting in a technical sense of title to the gift, but upon the actual possession or enjoyment thereof. · By any fair construction the limitation as to possession or enjoyment expressed as to one class must be applied to the other, unless it be found that the statute, whilst treating the two as one and the same for the purpose of the imposition of the death duty, has yet subjected them to different rules."

After analyzing the words of the statute in order to arrive at its intent, the Court said [p. 495]:

" In view of the express provisions of the statute as to possession or enjoyment and beneficial interest and clear value, and of the absence of any express language exhibiting an intention to tax a mere technically vested interest in a case where the right to possession or enjoyment was subordinated to an uncertain contingency, it would, we think, be doing violence to the statute to construe it as taxing such an interest before the period when possession or enjoyment had attached."

---

[4] See, also, *United States* v. *Hazard,* 8 Fed. 380; *United States.* v. *Rankin,* 8 Fed. 872.

While there was no question of retroactivity in that case, for the reason that the statute antedated the creation of the trust, there was an attempt to tax vested interests subject to be divested prior to the time when it could be ascertained whether they would ever take effect in actual possession or enjoyment, and this the Court held could not be done in view of the language of the statute.[5]

In *Hertz* v. *Woodman*, 218 U. S. 205, *Vanderbilt* v. *Eidman* was followed. There a repealing act had been passed between the time of a decedent's death and the time for payment of a legacy under his will in accordance with the rules of administration. The Court held that as the legatee had become fully entitled to possession prior to the passage of the repealer he was liable for the tax. The dissenting justices, while not differing from the majority in the view that the tax was laid upon the coming into beneficial enjoyment and possession, were of opinion that until actual payment of the legacy the tax was not due, and therefore the repealing act had abolished it prior to the time fixed for its incidence upon the succession.

The foregoing cases are cited, not because they involve any constitutional questions, but because they answer in no uncertain terms the appellants' insistent argument that here the succession consists of but a single item,—the creation of a future interest,—and that upon the coming into being of that interest the succession is so complete as to prohibit the sovereign's imposing its excise as of the occasion of enjoyment and possession by the successor. They constitute a complete demonstration of the fallacy of the argument that a privilege tax which ignores the creation of the mere technical future interest and reaches

---

[5] See, also, *Brown* v. *Kinney*, 137 Fed. 1018; *Ward* v. *Sage*, 185 Fed. 7; *Rosenfeld* v. *Scott*, 245 Fed. 646.

the possession and enjoyment of property pursuant to such interest is unheard of or in any wise out of the ordinary.

*Second.* The sanction of this Court has been given to the collection of a like excise by the United States, under a statute similar to that here in question, and in circumstances like those in the case at bar.

A testator who died in 1846 devised real estate to his daughter for life, with remainder in fee to her son should he survive her. The daughter died in 1865. The collector's demand that the remainderman make return of his remainder for taxation under the act of 1864, above cited, was refused. The tax was assessed with penalty; payment was made under protest; and suit brought to recover the amount paid. Judgment for the collector was affirmed as to the tax, but, on grounds here immaterial, was reversed as to the penalty. *Wright* v. *Blakeslee,* 101 U. S. 174.[6]

The remainder was contingent, but it was urged that it was a form of future estate known to the law, which had vested in the son in 1846 and must be taxed, if at all, as of that date. But this Court was clear that the tax was laid on the event which occurred in 1865, quoting the words of the act to show that there was a " past " " disposition of real estate by will " " by reason whereof " the life tenant's children became " beneficially entitled, in possession " to the property devised " upon the death of [a] person dying after the passage of this act." The brief for appellant shows he argued that the phrase " past disposition " must be construed only to cover the case of a deed or will executed prior to the passage of the law, but legally operative thereafter, in order to avoid a retroactive effect of the statute and interference with vested

---

[6] A similar result had been reached in like circumstances in *Blake* v. *McCartney,* 4 Clifford 101, where apparently no attack was made on the constitutionality of the tax.

rights. He also insisted that the construction placed upon the act by the collector brought about an arbitrary result. So little did this Court regard the argument that it does not even notice it in its opinion. The Fifth Amendment obviously applied in that case, if the Fourteenth applies in the present.

*Third.* In cases involving the application of state laws imposing succession taxes, in circumstances such as are here found, this Court has overruled the contentions here made, and sustained the tax. The facts involved in some of these cases were more favorable to the appellants' contentions than those in the case at bar.

In *Cahen* v. *Brewster,* 203 U. S. 543, the decedent, a resident of Louisiana, died May 26, 1904; his will was probated May 30; a final accounting was made and tableau of distribution submitted to the Probate Court on August 3. These were approved and distribution ordered by a judgment of August 16. On October 16, the universal legatees petitioned the Probate Court for the delivery of the residuary estate to them. The executors answered that a tax was due on the legacies which they were bound to withhold. On June 28, 1904, a statute had been passed which imposed a tax applicable to all successions not finally closed at the date of its passage and all that should thereafter be opened. There were no forced heirs, and under the statutes of Louisiana the universal legatees were vested by law at the moment of death with full title to the property without taking any step whatever to put themselves into possession, without demanding delivery, or signifying their assent to accept the property bequeathed. The statutes are quoted in the margin, 203 U. S. 549.

The petitioners argued that the taxing act as applied to them was violative of the Fourteenth Amendment because retroactive and arbitrary. The Supreme Court of Louisiana sustained the tax. This Court affirmed, hold-

ing that the State was at liberty to decide at what point it would impose the tax, provided such imposition was prior to the legatees' actual possession of the property.[7]

Appellants' attempt to distinguish this case is unconvincing. They say that it merely decided that the State had the power to lay the tax so long as the property was under the control of its courts for administration. They overlook the fact that in the instant case the possession of the trustees of the Coolidge trust did not cease until the death of the survivor of the settlors. During all that time the trust property was under the control of the Massachusetts courts. Not until those trustees had settled their trust and made distribution in accordance with the law of Massachusetts could the remaindermen come into possession and enjoyment of the property. And obviously the operation of the law of Massachusetts as to credits for expenses and commissions, and as to the duties of the trustees, and as to delivery of the trust property, might all be invoked before the beneficiaries could get actual possession and enjoyment. It is certainly an immaterial difference that in the one case the fiduciaries were called executors and in the other trustees. Both were subject to the law of the State, which defined and protected the rights of beneficiaries in both cases. The Coolidge children could not obtain possession or control of the corpus despite their parents' release of all interest in it. The trustees still had duties to perform. *Coolidge* v. *Loring, supra*. *Cahen* v. *Brewster* presents a more extreme case than this, because it involved no such contingency of divestment as is here involved; the executors

---

[7] *Carpenter* v. *Pennsylvania*, 17 How. 456 dealt with a similar situation and the tax was sustained. It was decided prior to the adoption of the Fourteenth Amendment; but in *Orr* v. *Gilman*, 183 U. S. 278, 286, it was said that the grounds on which it went were pertinent under the amendment.

there having completed their administration, the act of physical delivery only remained to be performed by them.[8]

In *Chanler* v. *Kelsey,* 205 U. S. 466, one Astor, in 1844, 1848, 1849 and 1865, made deeds to trustees, which provided that the income should go to his daughter Laura for life, with remainder to her issue in fee, or in default thereof, to her heirs in fee, with power of appointment amongst her issue in such amounts and proportions as she should,—by instrument in its nature testamentary, to be acknowledged by her as a deed in the presence of two witnesses, or published by her as a will,—appoint. She died in 1902 and by will exercised the power. An act of 1897 imposed a succession tax, and under its provisions the authorities sought to collect, from the appointees under the daughter's will. The argument made on behalf of the beneficiaries was that the gift was completed when Astor made his deeds. It will be noted that the remainders were in that case vested, subject to be divested by the daughter's exercise of the power. The argument was strongly pressed that in the case of a power of appointment title passes under the creating instrument, and does not pass from the donee by virtue of his act of appointment. That this is sound law is undisputed. On this doctrine the beneficiaries founded their argument, that to tax the succession upon the occasion of their coming into possession and enjoyment was to tax something which had in fact occurred years before at the date of the delivery of the deeds by Astor. This is the same argument appellants now urge upon facts which present no significant legal difference from those in the *Chanler* case. The Court of Appeals of New York

---

[8] In *Stauffer's Succession,* 119 La. 66, it was held that where the executors had actually delivered the property to the legatee prior to the passage of the act the tax could not be collected, because the seisin in right had merged into a seisin in fact, and that to apply the statute would be to give it a retroactive effect; and reference was made to the *Cahen* case.

held the tax not offensive to any constitutional principle. This Court affirmed. In so doing, it disregarded the technical situation and looked to the substance of the matter.[9] At p. 473 it used the following language:

" However technically correct it may be to say that the estate came from the donor and not from the donee of the power, it is self-evident that it was only upon the exercise of the power that the estate in the plaintiffs in error became complete. Without the exercise of the power of appointment the estates in remainder would have gone to all in the class named in the deeds of William B. Astor. By the exercise of this power some were divested of their estates and the same were vested in others. It may be that the donee had no interest in the estate as owner, but it took her act of appointment to finally transfer the estate to some of the class and take it from others." [10]

---

[9] See also, to the same effect, *Orr* v. *Gilman, supra.*

[10] Taxes have been sustained where a statute passed after the creation of a future interest imposed a tax on the occasion of the acquisition of possession and enjoyment due to the failure to exercise a power of appointment, the exercise of which would have divested such future interest. *Saltonstall* v. *Saltonstall,* 276 U. S. 260, *infra; Minot* v. *Treasurer,* 207 Mass. 588; *Manning* v. *Board,* 46 R. I. 400; *Montague* v. *State,* 163 Wis. 58; *State* v. *Brooks,* (Minn.), 232 N. W. Rep. 331. Such cases are authority against appellants' contention. The " estate " or " interest " of the beneficiary is just as truly vested in such a case as here; it is equally true that he has to do nothing but wait to come into possession and enjoyment. In both instances some future event, either a voluntary act of the donor or the holder of the power, or an event certain to happen but uncertain as to the time of its happening, may deprive him of the possibility of possession and enjoyment. See *contra, Re Lansing,* 182 N. Y. 238; *Re Chapman,* 117 N. Y. S. 679. The courts of New York thus hold that possession and enjoyment due to the exercise of a power of appointment is taxable though the legal estate springs from the original instrument which antedated the taxing statute, while that due to non-exercise of the power is not.

In *Moffitt* v. *Kelly*, 218 U. S. 400, the facts were these:

Moffitt married in California in 1863 and resided there with his wife until his death in 1906. By his will he gave his estate to his wife and children as if he had died intestate. The probate court held that his widow's interest in the marital community was within the provisions of a law passed in 1905 taxing all devolutions of property by will or intestacy. The question was, therefore, whether a surviving wife was liable for a tax, which, as applied, could only be incident to her coming into untrammeled possession and enjoyment of what she had technically owned prior to the passage of the taxing statute. The Supreme Court of California held the tax valid against her insistence that this was a violation of the contract clause, the due process clause, and the equal protection clause of the Federal Constitution. This Court sustained the judgment, and said [p. 403]:

" But in every conceivable aspect this proposition must rest upon one or both of two theories, either that the nature and character of the right or interest was such that the State could not tax it without violating the Constitution of the United States, or that if it could be generically taxed without violating that instrument, for some particular reason the otherwise valid state power of taxation could not be exerted without violating the Constitution of the United States. The first conception is at once disposed of by saying that it is elementary that the Constitution of the United States does not, generally speaking, control the power of the States to select and classify subjects of taxation, and hence, even although the wife's right in the community property was a vested right which could not be impaired by subsequent legislation, it was, nevertheless, within the power of the State, without violating the Constitution of the United States, in selecting objects of taxation, to select the vesting in complete possession and enjoyment by wives of their shares in community

property consequent upon the death of their husbands, and the resulting cessation of their power to control the same and enjoy the fruits thereof. And this also disposes of the second conception, since if the State had the power so far as the Constitution of the United States was concerned, to select the vesting of such right to possession and enjoyment as a subject of taxation, clearly the mere fact that the wife had a preëxisting right to the property created no exemption from taxation if the selection for taxation would be otherwise legal. It follows, therefore, that the mere statement of the contention demonstrates the mistaken conception upon which, in the nature of things, it rests.

" It is said, however, that the reasoning just stated, while it may be abstractly sound, is here inapplicable, because the thing complained of in this case is that the State of California has imposed an inheritance tax upon the share of the wife in the community and thereby taxed her as an heir of her husband, when if the laws existing at the time of the celebration of the marriage be properly construed and be held to be contractual she took her share of the property on her husband's death, not as an heir to property of which he was the owner, but by virtue of a right of ownership vested in her prior to the death of the husband, although the right to possess and enjoy such property was deferred and arose only on his death. But for the purpose of enforcing the Constitution of the United States we are not concerned with the mere designation affixed to the tax which the court below upheld, or whether the thing or subject taxed may or may not have been mistakenly brought within the state taxing law. We say so because in determining whether the imposition of the tax complained of violated the Constitution of the United States, we are solely confined to considering whether the State had the lawful power, without violating the Constitution of the United States, to

levy a tax upon the subject or thing taxed. This being true, as it clearly results from what we have said that the vesting of the wife's right of possession and enjoyment arising upon the death of her husband was subject to be taxed by the State, so far as the Constitution of the United States was concerned, it follows that whether the tax imposed was designated or levied as an inheritance tax or any other is a matter with which we have no concern."

Whatever may be said of the nature of the wife's interest in community property, this decision assumes the wife's vested interest in her half thereof; and that its free and unencumbered enjoyment only was postponed to the husband's death. There can be no difference in legal effect between that situation and one presented by the division of the total interests in a given property into a life tenancy and a remainder.

The authority of the cases just noted has not heretofore been questioned in this court, and for years they have stood unqualified in the vindication of the constitutional validity of just such a tax as is now under attack.

*Fourth.* In all its decisions touching death duties, whether on successions or on transfers, this Court has enunciated principles which sustain the validity of the tax.

The most recent expression with respect to a succession tax concerned the very laws of Massachusetts the application of which is here called in question.

In *Saltonstall* v. *Saltonstall,* 276 U. S. 260, one Brooks, on various dates between 1905 and 1907, executed deeds to trustees, which provided that the income should be paid to the settlor for life, or, if he elected, should be accumulated, and that upon his and his wife's deaths the income should be paid to his children in spendthrift trust, with gifts over. The instruments reserved to the grantor

certain powers of management of the trust and also provided that their terms might be changed by him with the concurrence of one trustee. Brooks died in 1920, having three times changed the trusts,—the last time in 1919. At the time the deeds were executed there was no statute taxing the succession to children of a decedent. But prior to Brooks' death the act of 1907, which is involved in the present case, had been passed, and had been amended by an act of 1909 taxing the acquisition of possession and enjoyment of property by virtue of the exercise of a power of appointment or by reason of the failure to exercise it. The Supreme Judicial Court of Massachusetts held that the power of revocation reserved to Brooks was equivalent to the creation of a power of appointment in him, and that since the beneficiaries could not be certain of taking until his death, the gift was one made or intended to take effect in possession or enjoyment after his death; and that the tax was on the succession, which includes the " privileges enjoyed by the beneficiary of succeeding to the possession and enjoyment of property." There as here it was claimed that the beneficiaries had vested interests subject to be divested by a future event (in that case, the exercise of the power), which never happened, and they argued that the tax law was retroactive in its operation if applied to their interests, and hence violated the due process clause, the equal protection clause, and probably Art. I, § 10 of the Constitution. There as here it was insisted that the remaindermen needed nothing from the Commonwealth of Massachusetts subsequent to the vesting of their remainders.

After pointing out that the excise was not on the privilege of transmission, as was the Federal estate tax dealt with in *Nichols* v. *Coolidge,* but was upon the privilege of succession, which might constitutionally be subjected to a tax by the State, whether occasioned by death or

effected by deed, and after calling attention to the fact that the tax was imposed not on the donor, but on the beneficiary, this Court said [p. 271]:

" . . . the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor; and the value of the gift at that operative moment, rather than at some later date, is the basis of the tax."

The Court further stated that,

"So long as the privilege of succession has not been fully exercised it may be reached by the tax."

Again the Court said [p. 271]:

" . . . in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices."

One of such other "legal devices" is a provision "divesting" a remainder which is "vested."

As the above quotation shows, the essential question in all such cases is whether the succession has become complete by actual possession and enjoyment, prior to the passage of the taxing act.

Notwithstanding the distinction between a transfer tax and a succession tax, the decisions under the Federal estate tax statutes (transfer tax laws) are convincing on the matter of substantiality as against technicality. The Court has uniformly disregarded the technical aspect of a transfer and looked at the reality and substance of the transaction. There is, in this aspect, no logical distinction between the two kinds of excise.

In *Chase National Bank* v. *United States,* 278 U. S. 327, where the beneficiaries' interests were admittedly vested, the Court reiterated the principle stated in *Salton-*

*stall* v. *Saltonstall;* that the test of constitutionality is the incidence of the tax on the shifting of economic benefit, and not on the passage of a mere technical legal title. Thus it said [p. 338]:

" Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chanler* v. *Kelsey,* 205 U. S. 466."

In *Tyler* v. *United States,* 281 U. S. 497, the Court considered the estate tax provisions of the Revenue Acts of 1916 and 1921. Both acts contained a provision that upon the death of one of two tenants by the entireties there should be included in the amount of the decedent's estate, for the purpose of measuring the tax, the value of the joint estate property, " except such part thereof as may be shown to have originally belonged to " the surviving joint tenant, " and never to have belonged to the decedent." Under this provision the United States assessed a tax against the estates of Pennsylvania and Maryland decedents. Collection was resisted on the ground that, by the common law of those States, tenants by the entireties are seised of the whole and of every part of the joint estate, and that the survivor had a vested estate long prior to the passage of the acts.

It was conceded that at the death of one, nothing descends to the survivor; the latter has, in the eye of the law, no more and no less than he or she had before— technically speaking there is no succession.

But Congress expressed a purpose to tax the passage of something from the decedent at death; just as here the Massachusetts legislature showed its intent to tax the

acquisition of something which accrued to the beneficiaries at the death of the settlor. In the instant case the so-called vested estate of the beneficiaries was subject to be divested by their death prior to that of the survivor of the grantors. In the *Tyler* case the estate was absolutely vested; not only so, but it was in law as large *qua* the survivor after the death of his co-tenant as it had been when both were alive; it could not be divested by the act of either party; it could not be taken in execution of a judgment against either party; the survivor needed to make no demand upon anyone for possession.

The taxpayers argued in the *Tyler* case, on precisely the same ground as appellants now urge, that the survivor's interest had vested long prior to the adoption of the Revenue Acts; that no transfer of title or interest in property occurred on the death of one of the tenants by the entireties, and consequently the tax was arbitrary and in violation of the Fifth Amendment, because the subject or event on which the tax must be predicated was wanting. But the Court had no difficulty in holding that what happened at the death of one of the tenants was a transfer from the decedent of something which was the legitimate subject of an excise. The Court said (p. 503):

"The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

Language more closely descriptive of the situation presented in the present case could not be employed. Again the Court said (pp. 503–504):

"According to the amiable fiction of the common law, adhered to in Pennsylvania and Maryland, husband and wife are but one person, and the point made is, that by the death of one party to this unit no interest in property held by them as tenants by the entirety passes to the other. This view, when applied to a taxing act, seems quite unsubstantial. The power of taxation is a fundamental and imperious necessity of all government, not to be restricted by mere legal fictions. Whether that power has been properly exercised in the present instance must be determined by the actual results brought about by the death, rather than by a consideration of the artificial rules which delimit the title, rights and powers of tenants by the entirety at common law. : See *Nicol* v. *Ames*, 173 U. S. 509, 516; *Saltonstall* v. *Saltonstall, supra*, p. 271.

" Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. Before the death of the husband (to take the *Tyler* case, No. 428,) the wife had the right to possess and use the whole property, but so, also, had her husband; she could not dispose of the property except with her husband's concurrence; her rights were hedged about at all points by the equal rights of her husband. At his death, however, and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus

the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax. And in that view the resulting tax attributable to such property is plainly indirect."

Every word of the above quotation applies with as great force to the beneficiaries of the Coolidge trust as it applied in that case to the surviving tenant.

In *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, a testator who died in 1922 had, in the period between 1903 and 1919, while not in contemplation of death, executed seven trust indentures. Two of these provided that the income should be paid to the settlor for life; and after his death to named persons, with remainders over. These deeds reserved a power of revocation to the settlor alone. The remaining five provided for life incomes to certain persons, terminable five years after the settlor's death, or upon the death of the life tenants, whichever should first happen, with remainders over. Powers of amendment were reserved in these, not to the settlor alone, but jointly to the settlor and certain beneficiaries. One of the seven trusts was modified in a matter immaterial to the decision and the others were not modified or revoked. In calculating the amount of the Federal estate tax the United States sought to include the property embraced in all seven of the trusts. It was held that as to the two trusts in which the settlor had unrestricted power of revocation the transfer was not complete until his death. As to the five trusts in which the settlor did not have such power in himself alone, but had power of amendment jointly with bene-

ficiaries, it was decided that the property had for all practical purposes passed completely from his control. It was pointed out that the reservation of powers of management in the settlor, as distinguished from the right to revoke or change the beneficiaries of the trust, was insignificant, and that the essential test was the passage of the economic benefit or enjoyment of the property. Thus it was said [p. 346]:

" Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift *inter vivos* not subject to the tax."

Repeatedly throughout the opinion the passage of the control, possession and enjoyment of the property is referred to as the touchstone of the incidence of the tax. If that be the test when the privilege of the transferor is under investigation, no reason is apparent why the same yardstick should not be used when we are considering acquisition of rights by the beneficiary.

Thus the *Reinecke* case is a full authority for the disregard of mere legal interests as distinguished from substantial rights of control or enjoyment. Technically speaking, the remainders to the beneficiaries in that case were vested subject only to be divested by the exercise of a power of revocation reserved to the grantor. It has been argued in the instant case that the vested estates created by the deed of 1907 never were divested; that

the event which could work a divestiture never occurred. That was equally true in the *Reinecke* case.

It might well have been argued in the *Reinecke* case that the right of revocation reserved by the grantor did not constitute an interest in the property; was not a property right, and therefore the grantor having parted with all legal interest his estate could not be taxed as upon the transfer of any property or any interest recognized by the law. Such an argument would have been technically sound under *Jones* v. *Clifton,* 101 U. S. 225, 230, where it was said of such a power:

" The title to the land and policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will. . . . Nor is the power a chose in action."

The reasoning in the *Reinecke* case shows that such an argument would have been of no avail. No more ought the argument of appellants, based upon the so-called vesting of the future interest at the execution of the deed, prevail in this case.

It is said that the death of the settlors has no necessary relation to the benefits received by the remaindermen; that any other event might as well have been chosen as the occasion for the commutation of the children's future interests into interests in fee simple in possession; and that this in itself makes the tax arbitrary and unreasonable because the incident which occasions its imposition is irrelevant. This Court has negatived this contention. In *Keeney* v. *New York, supra,* it was said [p. 536]:

" There can be no arbitrary and unreasonable discrimination. But when there is a difference it need not be great or conspicuous in order to warrant classification. In the present instance, and so far as the Fourteenth Amendment is concerned, the State could put transfers intended to take effect at the death of the grantor in a

class with transfers by descent, will or gifts in contemplation of the death of the donor, without, at the same time, taxing transfers intended to take effect on the death of some person other than the grantor, or on the happening of a certain or contingent event."

And in the same case it was said [p. 535]:

"Where the grantor makes a transfer of property to take effect on the death of a third person, it might . . . be taxed as a devolution or succession." [11]

And in *Chase National Bank* v. *United States, supra,* the same principle was announced at page 338. [12]

Appellants rely on *Nichols* v. *Coolidge, supra; Blodgett* v. *Holden,* 275 U. S. 142; *Untermyer* v. *Anderson,* 276 U. S. 440; *Chase National Bank* v. *United States, supra;* and *Reinecke* v. *Northern Trust Co., supra,* as in principle supporting their position. The *Reinecke* case and the *Chase National Bank* case have already been analysed. It is evident from what has been said that appellants can derive no comfort from those decisions.

Of course the test to be applied in cases arising under the Federal estate tax law is whether the transferor has parted with every vestige of control over the beneficial enjoyment and possession of the property, and not whether the beneficiary has received it. *Nichols* v. *Coolidge* dealt,

---

[11] See also *Blake* v. *McCartney,* 4 Clifford, 101, where under a bequest in trust effective in 1847, two successive life estates were created, the second of which took effect in possession in 1867, and it was held the beneficiary was liable for tax under the act of 1864. The court said: "The argument for the plaintiff is, that the tax can only be imposed by virtue of the section in question, where the death of the predecessor is the cause of the successor's being entitled to possession of the real estate, and not where it is merely the occasion, as in this case; but the proposition finds no support in the language of the provision, and the rule in the Exchequer Court of England is well settled the other way."

[12] See *Boston Safe Dep. & T. Co.* v. *Commissioner,* (Mass.), 166 N. E. 729.

under the Federal estate tax law, with the same trust involved in this case, and the inquiry there necessarily was whether prior to the passage of the estate tax act the grantors had so fully divested themselves of all right of control and enjoyment of the property that nothing remained to pass out of them at death. The facts were held to make an affirmative answer imperative. Here, on the other hand, we inquire, not whether the grantor has parted with title, control and enjoyment, but whether the grantee has fully acquired them prior to the passage of the law.

In *Blodgett* v. *Holden* and *Untermyer* v. *Anderson* the Court had under consideration a transfer tax laid on the donor in respect of gifts made *inter vivos.* The gifts in those cases were complete prior to the passage of the taxing statute, and, as in *Nichols* v. *Coolidge,* technical title, power to recall, and beneficial use and enjoyment had all passed from the donor prior to the legislative attempt to tax the gift. These circumstances demonstrate that neither case is an authority for holding a succession tax invalid if levied on the occasion of the acquisition of possession and enjoyment of property by the donee.

Finally, appellants cite *Matter of Pell,* 171 N. Y. 48, and certain cases in state courts which have followed it. That case adopts the views urged by appellants. It was followed in *Hunt* v. *Wicht,* 174 Cal. 205.

*Houston's Estate,* 276 Pa. 330, involved no constitutional question. The statute in that case was construed to apply only to interests thereafter created.

In *Lacey* v. *State Treasurer,* 152 Ia. 477, and *Commonwealth* v. *Wellford,* 114 Va. 372, the statutes were construed as affecting only interests thereafter arising, though in both there were *dicta* to the effect that a contrary construction would render them unconstitutional. The *dic-*

*tum* in the *Lacey* case is repugnant to the later decision in *Brown* v. *Gulliford,* 181 Ia. 897.

*State* v. *Probate Court,* 102 Minn. 268, is not only distinguishable on its facts, as later held by the same court (*State* v. *Brooks,* 232 N. W. 331, 334), but the constitutional question here raised was not discussed.

In a well considered case, involving precisely the same question as *Cahen* v. *Brewster, supra,* the tax was sustained. *Gelsthorpe* v. *Furnell,* 20 Mont. 299.

It cannot, therefore, be said, as appellants contend, that there is any considerable body of state decisions in their favor.

The reasoning of the state court cases which have held the tax invalid is flatly contrary to the decisions of this Court in the cases above discussed; and, in view of that fact, it should not prevail here.

The Massachusetts court described the tax as one on the succession, and we have dealt with it on that basis; but it is neither necessary to sustain it nor permissible to defeat it by applying to it any particular descriptive language. See *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 625, 626; *Educational Films Corp.* v. *Ward, ante,* p. 379. *Moffitt* v. *Kelly, supra; Tyler* v. *United States, supra.* A State's power to tax property is plenary. The power to tax it as a whole necessarily embraces the power to tax any of its incidents, or the use or enjoyment of them,—provided only that the taxable occasion does not antedate the taxing statute so as to render it invalid because retroactive. If the property itself may constitutionally be taxed, obviously it is competent to tax the use of it, *Billings* v. *United States,* 232 U. S. 261; *Hylton* v. *United States,* 3 Dall. 171; or a sale of it, *Thomas* v. *United States,* 192 U. S. 363, 370; *Nicol* v. *Ames,* 173 U. S. 509; or the gift of it, *Bromley* v. *McCaughn,* 280 U. S. 124. And if the gift of it may be taxed, it is difficult

634

to see upon what constitutional grounds the power to tax the receipt of it, whether as the result of inheritance or otherwise, may be denied to a State, whatever name may be given the tax, and even though the right to receive it, as distinguished from its actual receipt at a future date, antedated the statute. Receipt in possession and enjoyment is as much a taxable occasion as the enjoyment of any other incident of property. A levy upon the taking possession of property acquired by inheritance is one of the most ancient forms of tax known to the law. It existed on the European continent and in England prior to the adoption of our Constitution.[13]

A tax laid upon the succession after the future interest has been created and the right accrued, but before the actual enjoyment in possession of the property, is no more a denial of due process than a tax laid upon income accrued prior to the adoption of the taxing statute but received after its passage. The constitutionality of the latter form of tax is now beyond question, *Brushaber* v. *Union Pacific R. Co.*, 240 U. S. 1, 20; *Lynch* v. *Hornby*, 247 U. S. 339, 343; *Taft* v. *Bowers*, 278 U. S. 470, 483, 484; *Cooper* v. *United States*, 280 U. S. 409, 411.

The contention that taxation of a property right or an incident of ownership previously created by a deed or contract impairs the obligation of the contract is not new. But it must be denied both on reason and on authority. The present tax has no reference to the contract or its obligation save to recognize and observe the existence of both. It would serve no useful purpose at this late day to elaborate the doctrine, long since settled, that to be obnoxious to the contract clause, a statute must

---

[13] *Nielsen* v. *Johnson,* 279 U. S. 57, 53; Gleason and Otis, "Inheritance Taxation" (4th ed.) 243. As shown by Digby, "History of the Law of Real Property" (5th ed.) p. 40, feudal "relief" was a payment made by an heir for the privilege of admission as tenant of the land in his ancestor's place.

act upon the contract so as to interfere with the right of enforcement. All of the cases cited as supporting the conclusion of the Court deal with such a situation. None of them even remotely bears on the question here raised whether a tax levied in respect of the future enjoyment of property which chanced to be acquired under an earlier contract impairs the contract. That question, often raised, has always been answered here in the negative.

In *Orr* v. *Gilman, supra,* it was claimed that a succession tax law enacted after the original deed granting a power of appointment, and construed as taxing the beneficiary of the power, violated Art. I, § 10 of the Constitution. The argument was rejected.

A similar contention made in *Chanler* v. *Kelsey, supra,* was disposed of in these words [p. 478]:

" Nor do we perceive that the effect has been to violate any contract right of the parties. It is said that this is so, because instead of disposing of the entire estate, ninety-five per cent of the property included in the power has been transferred and five per cent taken by the State; but as there was a valid exercise of the taxing power of the State, we think the imposition of such a tax violated no contract because it resulted in the reduction of the estate."

Justice White, in *Moffitt* v. *Kelly, supra,* said of a similar contention:

" 1. *The alleged violation of the contract clause.*—Considered merely subjectively, the contention is that the rights vested in the wife as a partner in the community existing by virtue of the constitution and laws of the State of California governing at the time of the marriage were contractual rights of such a character that they could not be essentially changed or modified by subsequent legislation without impairing the obligations of the contract, and thereby violating the Constitution of the United States. But even although this theoretical proposition be

fully conceded, for the sake of the argument, it is apparent that it is here a mere abstraction, and is therefore irrelevant to the case to be decided. We say this because there is no assertion of the giving effect to any law enacted subsequent to the contracting of the marriage which purports to essentially modify the rights of the wife in and to the community, as those rights existed at the time the marriage was celebrated. This is so because the state law, the enforcement of which it is asserted will impair the obligation of the contract, is merely a law imposing a tax." (218 U. S., pp. 402–403.)

The foregoing cases constitute only one application of a principle which has been repeatedly applied not only to rights derived under deeds in their aspect as contracts, but to rights derived pursuant to all sorts of contracts. It was said in *North Missouri R. Co.* v. *Maguire,* 20 Wall. 46, 61:

"Authorities from numerous sources are cited by the plaintiffs, but none of them show that a lawful tax on a new subject, or an increased tax on an old one, interferes with a contract or impairs its obligation, within the meaning of the Constitution, even though such taxation may affect particular contracts, as it may increase the debt of one person and lessen the security of another, or may impose additional burdens upon one class and release the burdens of another, still the tax must be paid unless prohibited by the Constitution, nor can it be said that it impairs the obligation of any existing contract in its true legal sense."

With respect to deeds and grants, this Court said in *Providence Bank* v. *Billings,* 4 Pet. 514, 562:

" Land, for example, has, in many, perhaps in all the states, been granted by government since the adoption of the constitution. This grant is a contract, the object of which is that the profits issuing from it shall enure to the benefit of the grantee. Yet the power of taxation

may be carried so far as to absorb these profits. Does this impair the obligation of the contract? The idea is rejected by all; and the proposition appears so extravagant, that it is difficult to admit any resemblance in the cases."

In *Kehrer* v. *Stewart,* 197 U. S. 60, it was contended that a statute levying a tax upon all agents of packing houses doing business in the State, of $200, in each county where such business was carried on, impaired the obligation of the contract which an agent had entered into with a packing house. With respect to this contention this Court said [p. 70]:

" The argument that the tax impairs the obligation of a contract between the petitioner and Nelson Morris & Company is hardly worthy of serious consideration. The power of taxation overrides any agreement of an employé to serve for a specific sum."

With respect to a tax upon income, it was said in *Murray* v. *Charleston,* 96 U. S. 432, 446:

"A tax on income derived from contracts, if it does not prevent the receipt of the income, cannot be said to vary or lessen the debtor's obligation imposed by the contracts."

In *Clement National Bank* v. *Vermont,* 231 U. S. 120, the claim was that a state statute which levied a tax on bank deposits collectible from the depositor, and which had to be deducted by the bank from the interest paid to the depositor, impaired the obligations of the prior contracts of depositors with the bank. This Court overruled the objection, saying [p. 143]:

" But this is clearly untenable. The statute did not act upon such contracts; it imposed a tax upon the property of depositors in the exercise of a power subject to which the deposits were made."

In *Lake Superior Mines* v. *Lord,* 271 U. S. 577, the obligation of an outstanding contract for the receipt of

royalties on minerals mined was held not to be impaired by a later state statute taxing the proceeds of the contract. The Court said [p. 581]:

" Titles to all the lands and leases were obtained subject to the State's power to tax. If the statute now in controversy is within that power, it cannot impair the obligation of appellants' contracts; if beyond, it is, of course, invalid. Accordingly, there is no occasion further to discuss the application of Article I, Section 10."

In short, it is evident from the authorities cited, and many more which might be quoted, that the power to tax property, or a right, or a status, or a privilege, acquired or enjoyed by virtue of a contract, is in no wise hindered or impeded by the fact of the existence of the contract whether it antedates or follows the effective date of the taxing act. No exercise of a governmental power, whether it be that of taxation, police, or eminent domain, though it make less valuable the fruits of a private contract, can be said to impair the obligation thereof.

I think the judgment should be affirmed.

MR. JUSTICE HOLMES, MR. JUSTICE BRANDEIS, and MR. JUSTICE STONE concur in this opinion.