## LIPPINCOTT et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5245.

Circuit Court of Appeals, Third Circuit.
Aug. 8, 1934.

Jesse I. Miller, of Washington, D. C., for petitioners.

Pat Malloy, Asst. Atty. Gen., and Walter L. Barlow and John H. McEvers, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This petition involves the amount of the transfer tax due on the estate of Walter Lippincott, who died testate in 1927. The petitioners are the executors of the estate.

Section 302 of the Revenue Act of 1926 (26 USCA § 1094) provides, in part:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * in contemplation of * * his death. * * * Where within two years prior to his death, * * * the decedent has made a transfer or transfers, * * * of any of his property, * * * and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this chapter. * * *"

On May 13, 1926, the decedent conveyed a considerable part of his real property to his daughter. He died ten months later, on March 2, 1927. The Commissioner of Internal Revenue determined that the value of the property conveyed to his daughter, less $5,000, should be included in computing the gross value of the estate as a transfer made in contemplation of death within the meaning of section 302 (c). The Commissioner evidently relied upon the second sentence of paragraph (c) in assessing the deficiency—that is, since the transfers were made within two years of death, they were made in contemplation of death as a matter of law.

After the Commissioner's determination, but prior to the time that the petitioners brought their petition to the Board of Tax Appeals, the Supreme Court held that the two-year provision in section 302 (c) was unconstitutional. Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772. The Board sustained the Commissioner's determination on the ground that the transfers were made in fact in contemplation of death under the terms of the first sentence in paragraph (c).

The petitioners believe that the duty of showing the Board that the transfers were made in contemplation of death was upon the Commissioner since he had made the assessment under an unconstitutional statutory provision and had not determined as a matter of fact that the conveyances were made in contemplation of death. He thus did not make out a prima facie case. The petitioners rely on First National Bank v. Commissioner, 63 F.(2d) 685, 693 (C. C. A. 1). We do not find it necessary to discuss the question other than to point out that in First National Bank v. Commissioner, there was neither proof that the Commissioner had determined as a fact that certain transfers within two years of death were in contemplation of death nor was there evidence before the Board on which the finding of that fact could be based.

The real question in this case is whether or not there is substantial evidence to support the finding of the Board that the transfers of the real property by the decedent to his daughter were in fact made in contemplation of death. There is no dispute as to the facts upon which the Board made its finding.

In 1922, the decedent, Walter Lippincott, was stricken by hemiplegia which resulted in paralysis of his left side. He was confined to his home for a month under the care of trained nurses. He was unable to walk without assistance and was usually in a wheel chair.

Prior to this attack, the decedent, who was wealthy, had employed a trained nurse because he liked to have some one near by to wait upon him. He managed his business affairs until his illness in 1922. After that his son-in-law, a physician, who, with his wife, resided next door to the decedent, attended to his financial matters.

The Board found that after the attack of hemiplegia his mind was clear and his disposition cheerful; he was driven daily in an automobile and enjoyed calling on his friends and receiving their visits, and that although he was in poor health and partially disabled, there was no appreciable change in his physical condition for a period of five years, when he contracted pneumonia and died within three days.

It appears that hemiplegia is not necessarily a progressive disease and that it is not unusual for a victim of an attack to live usefully many years.

On May 13, 1926, the decedent, who was then seventy-seven years old, conveyed substantially all of his real estate to his daughter. It was valued at over a million dollars and the bulk of it was residential property in which he and his family had lived for years. The deeds were executed with the un-

derstanding that they would not be recorded until his daughter made a will providing that if she died, the decedent should have the use of the estate, which he then occupied, during his lifetime. The will was duly executed. At this time, his income from his personal property was about $100,000 annually. Ten months after he conveyed the property, he died.

The Board of Tax Appeals found further that after the death of decedent's wife in 1917, he contemplated a second marriage; that in November, 1924, he instructed an attorney to prepare a contract between him and a certain woman, in whom he was interested, whereby she was to accept certain specified income in lieu of the marital rights which she would obtain, and that she refused to sign the agreement; that during 1925, the decedent had a second agreement drawn, and in order to "bring her to time" and induce her to sign, the agreement was drawn in blank, her name being left out; that she again refused to execute the instrument.

The decedent's attorney testified that the decedent transferred the real property to his daughter because he wanted to remarry and believed that his daughter, who was his only child, should have the property in which she had always lived.

After he had submitted the two marital contracts to the woman whom he wished to marry and she had refused to execute them, he conveyed the real property to his daughter, saying, "Now I can marry whether she signs the ante-nuptial agreement or not."

His physical condition was unchanged since he sustained the attack of hemiplegia in 1922 and he was mentally alert and cheerful, continually planning for the future. His mental attitude showed that he executed the deeds to prevent a future wife from obtaining rights in his real property. Three physicians who attended him during this period testified that the decedent had no reason to believe that he was going to die shortly and that all of his interests were in life.

The Board determined from these facts that the transfers by the decedent to his daughter were in fact made in contemplation of death and not of marriage. It based its conclusion on the decedent's age, poor health, and the fact that two physicians advised him not to remarry, because of those conditions.

The question here is simply whether or not there was substantial evidence to support the Board's determination that the transfers were made in contemplation of death.

The Board seems to have been so impressed by the fact of decedent's age and physical condition that it overlooked the testimony which shows that the dominant motive impelling the transfer was to put him in a position to remarry without subjecting his real property to the control and interference of his second wife rather than the motive of freeing it from a transfer tax at his death. United States v. Wells, 283 U. S. 102, 116, 51 S. Ct. 446, 451, 75 L. Ed. 867; Commissioner v. Nevin, 47 F.(2d) 478 (C. C. A. 3); Neal v. Commissioner, 53 F.(2d) 806 (C. C. A. 8); Farmers' Loan & Trust Company v. Bowers, 68 F.(2d) 916 (C. C. A. 2).

In the case of United States v. Wells, supra, the Supreme Court said: "The dominant purpose [of section 302 (c) of Revenue Act 1926, 26 USCA § 1094 (c)] is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * The question, necessarily, is as to the state of mind of the donor. * * * The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer. * * * If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * The purposes which may be served by gifts are of great variety. * * * There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death."

There is no conflict of evidence in this case. The Board has accepted objective circumstances, such as age and health and the fact of death, as conclusive; but they are merely evidential. They may be decisive in determining the state of the transferor's mind in certain cases, and on the other hand, in others, they may become immaterial facts.

We are of the opinion that the evidence requires the determination that the decedent was motivated by a purpose associated with life rather than death. While it is tempting to reach the opposite conclusion in view of the circumstances of his age and health, the evidence clearly shows that the transfers were made by an alert, elderly gentleman to gain his end and avoid a possible conflict with his prospective bride over marital rights in his property. She had failed to execute two agreements which would waive her rights as his wife in his property. The decedent's statements to three witnesses, his general out-

look, and his daily attitude to those close about him, force the conclusion that he made the transfers to avoid legal complications involving himself, his daughter, and his intended wife. There is no indication that he was contemplating death. He was thinking of marriage, was cheerful, alert, planning for the future, and eager to visit or receive his friends. The transfer of the property to his only child was a natural impulse—she had lived in these properties all of her life and he thought that she should have these properties at that time rather than run the risk of having the ownership of them eventually interfered with by his marriage.

The purpose of section 302 (c) is to reach all testamentary dispositions. A valid gift inter vivos is differentiated from a gift which is in substance made testamentary by the donor's motive. The record shows that the transfers here were impelled by the testator's desire that his daughter should presently receive property which he desired her to have in order that he might marry and avoid the attendant risks and difficulties that she might encounter in the rights of his wife. The consideration, then, which induced the transfers, was the decedent's desire to place his affairs in a condition that would permit him in good conscience to remarry.

The respondent argues that "even his thoughts of marriage related to his physical ailments (that is, the decedent believed that a wife would give him better care) and the disposition of his property after death." In other words, he anticipated death within a short period and that he was compelled to make these transfers presently to assure himself that his daughter would receive property that he wanted her to own after his death.

But this is as much an assumption on the part of the respondent as it made in an effort to sustain its principal argument that the *evidence* sustained the finding of the Board. As we have pointed out, the Board can only determine from the whole record whether or not these transfers were testamentary and that must be found in the decedent's motive. The evidence only permits the conclusion that the transfers were the result of the decedent's desire that his daughter should have the property and he anticipated that the rights which his prospective wife would obtain on marriage might interfere with the realization of this desire. The transfers of the property presently, in order that he might marry, are valid gifts inter vivos and not substitutes for testamentary dispositions.

We have considered the case of Farmers' Loan & Trust Company v. Bowers, 68 F.(2d) 916 (C. C. A. 2), on which the respondent relies. The facts of that case show that two motives induced the decedent to make a certain gift. One motive was to accomplish a purpose in contemplation of life, the other in contemplation of death. The court held that the taxpayer had failed to show which motive was dominant and had therefore failed to sustain the burden of proof. But in the case at bar the petitioners have borne the burden and shown that the conveyances were made, not in contemplation of death, but of life.

It follows that the determination of the Commissioner and the order of redetermination of the Board of Tax Appeals must be reversed and the return made by the petitioners approved.