## ST. LOUIS UNION TRUST CO. et al. v. BECKER, Collector of Internal Revenue.

### No. 10078.

Circuit Court of Appeals, Eighth Circuit. March 13, 1935.

Rehearing Denied April 19, 1935.

852

Crawford Johnson, of St. Louis, Mo. (Rhodes E. Cave and Thomas S. McPheeters, both of St. Louis, Mo., Duryee,

Zunino & Amen, of New York City, and Bryan, Williams, Cave & McPheeters, of St. Louis, Mo., on the brief), for appellants.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., and Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment in favor of the appellee in an action at law brought by the appellants to recover $94,022.35 paid by them to the appellee under protest as estate taxes.

The facts, as to which there is virtually no dispute, are as follows:

William Evans Guy, on January 3, 1921, executed four separate written declarations of trust, one for each of his four children, who at that time had reached their majority. By each of the trust instruments he conveyed to himself, as trustee, certain securities of the par value of $72,000; the aggregate value of the securities at that time being $288,000. From time to time thereafter he made additions to these trusts, and at the time of his death on July 24, 1928, the total value of the trust property included in the four trusts was $994,195. This amount the Commissioner of Internal Revenue included as a part of the gross estate of the decedent, under Revenue Act of 1926, § 302 (26 U. S. C. § 1094 [26 USCA § 1094]), and the appellants, his executors, after paying the additional estate tax which resulted, brought this action to recover it.

The four declarations of trust were identical, with the exception of the name of the beneficiary. The declaration of trust for Evelyn S. Guy is typical of each of the trusts, and, so far as pertinent, is as follows:

"I, William Evans Guy, of the City of St. Louis, and State of Missouri, hereby declare, this third day of January, 1921, that I hold in trust for my daughter, Evelyn S. Guy, the following property, to-wit:" (Here follows description of securities); "with the powers and for the uses and purposes hereinafter set forth, as follows:

"1. I am to have the power at any time, and from time to time, to sell any of the

trust property or estate, for such price and prices as I may determine. Any money coming into my hands as the proceeds of any such sale or otherwise and forming a part of the principal of said trust estate shall as soon as practicable, be reinvested by me. In making such investments, I am to have full power to purchase any property, real or personal, which I may think desirable to acquire or hold as part of the said trust estate, and I am not to be restricted to the purchase of such property as is ordinarily deemed advisable for trust property. I am likewise to have the power to rent or lease any and all real estate which may be included in said trust property for terms of any duration, whether such terms shall extend to a time beyond the termination of this trust or not. I am likewise to have full power and authority in my discretion to borrow money and secure the sums so borrowed by pledge or mortgage of any and all portions of said trust estate and I may out of the corpus or income of said trust estate, or out of both such corpus and income repay the sums so borrowed. I am to have full authority to invest or reinvest any sums so borrowed; and to collect and receive the rents, income and profits arising from the trust estate therein created. It being my intention to retain *as trustee* (italics ours) such rights, power and authority in respect to the management, control and disposition of said trust estate for the use and benefit of the beneficiary, as I have with respect to property absolutely owned by me.

"2. Out of the income and revenue accruing from said trust estate I shall have power to pay all taxes, expenses necessarily or properly incident to its care, preservation and management; and all other reasonable or necessary charges incident to the administration of the trust created hereby, and out of the remaining income and revenue, I am to pay the beneficiary of this trust an allowance of $300.00 a month, with power in my discretion from time to time to increase or decrease the said allowance whenever I may deem it to be to the best interest of the said beneficiary, to have such allowance increased or decreased. I shall have the power, from time to time, out of the remainder of said income and revenue, to appropriate and pay such sums as I may deem reasonably necessary for the maintenance, support and education of said beneficiary. Any income not distributed as hereinabove provided shall be added to the principal of the trust estate.

"3. In case of an emergency, or illness of said beneficiary, requiring a greater sum than that accruing as income or revenue, I shall have power to use as much of the principal of said trust estate as may be absolutely necessary.

"4. Any receipt given by the beneficiary of this trust to me for any sum paid to her by me, shall be a full acquittance and discharge for the payment mentioned in such receipt.

"5. The foregoing provisions for my said daughter, Evelyn S. Guy, shall be for her sole and separate use, free from all statutory and marital rights of her husband; and free from her debts and without the right on her part to assign, pledge, hypothecate, or anticipate, or in any way create a lien upon any of the income or corpus of the trust estate hereby created before she shall receive the same, nor shall any of the said income or corpus be subject to any claims of any persons who may at any time be creditors of my said daughter.

"6. (a) If the said beneficiary should die before my death, then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or (b) if I should die before her death, then this property shall thereupon become hers immediately and absolutely and be turned over to her and in either case this trust shall cease."

"[Signed]   William Evans Guy.
"Witness: Wm. Edwin Guy."

In 1921, at the time these trusts were made, Mr. Guy was seventy-six years of age. Long prior to that time he had retired from the active management of any corporations in which he was interested, but he conducted his own affairs, which were extensive, and continued as a director of the St. Louis Cold Storage Company, the Laclede Steel Company, and as trustee and director in several syndicates. He maintained a downtown office, where he went every business day when the weather was good, from September to June, which was the portion of the year that he spent in St. Louis. He took an active interest in all matters with which he was connected. He made a practice of consulting his physician on an average of about once in six months, and enjoyed almost perfect health for a man of his years. He had not consulted his physician for some time prior to

the date of the execution of the trusts, so far as the physician could remember. In June, 1928, about two months prior to his death, he had had a physical examination, which disclosed no change in his condition. He was an optimistic and cheerful man, and exceptionally alert mentally. He came of a long-lived family, and frequently had made the statement that he expected to live to be at least ninety. It seems that two of his immediate ancestors had lived beyond that age. None of his friends knew of any ailment which might have led him to suspect that his death was to be expected in the near future. He was careful of his health, but obviously not concerned about death. In fact, the evidence indicates that he was, at the time these trusts were executed, in as good physical and mental condition as possible for any man of his years. His purpose in making the four trusts, as expressed to his son (who drafted the instruments) and to at least one of his friends, was to make his children independent of him, to enable them to know what they might expect each year, in lieu of an allowance out of his own income, and to avoid the high surtax which would be imposed upon his income if he retained his property for himself.

The action was tried to the court below without a jury. Two questions were presented:

(1) Was the transfer of the property included in these four trusts intended to take effect in possession or enjoyment at or after death?

(2) Were the transfers made in contemplation of death?

The court below found that none of the beneficiaries named in the trust instruments acquired custody, control, or title to the corpus of the trust prior to the death of the settlor; that the title of the beneficiaries was contingent upon their survival of the settlor; and that the motive for the creation of the trusts was to decrease the settlor's income taxes by distributing the property and thus avoiding the high rate for large incomes, and at the same time to make provision for the distribution of the property included in the trusts at the settlor's death. The court concluded that the corpus of the trusts was transferred in contemplation of death, that the transfers were intended to take effect in possession and enjoyment at and after death, and that the value of the trust property

was therefore properly included in the gross estate.

It was the contention of the appellee, Collector of Internal Revenue, in the court below, and is his contention here, that the death of the settlor, rather than the trust instruments, constituted the generating source of title in the beneficiaries, since the final receipt and complete enjoyment of the trust property by them was contingent upon their surviving the settlor.

The pertinent provisions of the Revenue Act of 1926 are as follows:

Section 302, c. 27, 44 Stat. 9, 70 (26 U. S. C. § 1094 [26 USCA § 1094]). "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act [February 26, 1926], and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title [chapter]. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act [February 26, 1926], without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title [chapter]. * * * *"

In considering the question whether the transfer of the corpus of these trusts was intended to take effect in possession or enjoyment at or after death, it must be re-

membered that the federal estate tax is a tax on the transfer of property from the dead to the living, and not a tax upon the privilege of the living to succeed to the property of the dead. It is a transfer tax and not a succession tax. Young Men's Christian Association of Columbus, Ohio et al. v. Davis et al., 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; Edwards v. Slocum et al., 264 U. S. 61, 62, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge et al., Executors, 274 U. S. 531, 537, 541, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Ithaca Trust Company, Executor & Trustee v. United States, 279 U. S. 151, 155, 49 S. Ct. 291, 73 L. Ed. 647; Reinecke v. Northern Trust Company, 278 U. S. 339, 347, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; May et al., Executors v. Heiner, 281 U. S. 238, 244, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244; Saltonstall et al. v. Saltonstall et al., 276 U. S. 260, 270, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank et al. v. United States, 278 U. S. 327, 334, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388.

With that principle in mind, the Supreme Court has construed many trust instruments and has held that those absolutely and irrevocably vesting the corpus in a beneficiary prior to the death of the settlor, and not made in contemplation of death, were not subject to the tax imposed by section 302 (c) of the Revenue Act of 1926, and the similar provisions of other Revenue Acts, even though the benefits derived thereunder upon the death of the settlor would have been taxable under laws imposing a succession or inheritance tax such as those in force in some of the states.

In Shukert et al., Executrices v. Allen, 273 U. S. 545, 47 S. Ct. 461, 71 L. Ed. 764, 49 A. L. R. 855, there was an attempt to impose an estate tax under section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097). The property, the value of which was sought to be included in the gross estate, had been transferred by the testator on May 5, 1921, to a trust company to accumulate the income therefrom (subject to small deductions in case of extreme destitution of the testator's wife or of any of the beneficiaries named) until February 1, 1951, unless the last of the beneficiaries should have died more than twenty-one years before that date, and then to divide the principal and undistributed income among the three children of the testator. The question was whether the trust was one intended to take effect in possession or enjoyment after the testator's death. Mr. Justice Holmes, speaking for the court, said (pages 547, 548 of 273 U. S., 47 S. Ct. 461):

"The transfer was immediate and out and out, leaving no interest remaining in the testator. The trust in its terms has no reference to his death but is the same and unaffected whether he lives or dies. Although the Circuit Court of Appeals [6 F.(2d) 551] seems to have thought otherwise, the interest of the children respectively was vested as soon as the instrument was executed, even though it might have been divested as to any one of them in favor of his issue if any, or of the surviving beneficiaries, if he died before the termination of the trust. * * * There certainly is no transfer taking effect after his [the testator's] death to be taxed under section 401.

"It is not necessary to consider whether the petitioner goes too far in contending that section 402 (c) should be construed to refer only to transfers of property the possession or enjoyment of which does not pass from the grantor until his death. But it seems to us tolerably plain, that when the grantor parts with all his interest in the property to other persons in trust, with no thought of avoiding taxes, the fact that the income vested in the beneficiaries was to be accumulated *for them instead of being handed to them to spend* (italics ours), does not make the trust one intended to take effect in possession or enjoyment at or after the grantor's death."

In Nichols v. Coolidge et al., Executors, supra, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, the Supreme Court considered an attempt to tax, as part of an estate, property which had been conveyed in a trust instrument executed in 1907. The trust deed conveyed the property of Mr. and Mrs. Coolidge to trustees, to pay the income to the settlors, then to the survivor of them, and, after his or her death, to distribute the corpus to the settlors' five children. The trustees were authorized, among other things, to sell the trust property and to make and change investments. In 1917 the settlors assigned to their children their entire interest in the trust property, including the right to receive the income therefrom. Upon the death of the survivor of the settlors, a tax was assessed under section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097), upon the trust property. The tax was paid

and an action was brought to recover it. Section 402 (c) was in substance the same as the section with which we are here concerned. The court, in holding that the tax was wrongfully assessed, said (pages 542, 543 of 274 U. S., 47 S. Ct. 710, 714): "And we must conclude that section 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation."

In Reinecke v. Northern Trust Company, supra, 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, the Supreme Court reviewed a decision of the Seventh Circuit affirming a judgment of the District Court, which had allowed recovery of taxes assessed and collected under section 402 (c) of the Revenue Act of 1921 (42 Stat. 278), which section is similar to section 302 (c) of the Revenue Act of 1926 (26 USCA § 1094 (c), here involved, except that it specifically provided that the tax was to be imposed whether the transfer or trust was made or created before or after the passage of the act. Five of the trusts involved in that case were made in 1919, and created life interests in income with remainders over. In one of the trusts the life interest was terminable five years after the death of the settlor, or on the death of the designated life beneficiary should she survive. In the others, life interests in the income were created, terminable five years after the settlor's death or on the death of the respective life tenants, whichever should happen first. The settlor reserved to himself power to supervise the reinvestment of trust funds, to require the trustee to execute proxies to his nominee, to control all leases executed by the trustee, and to appoint successor trustees. In these five trusts the power was reserved to "alter, change or modify the trust," which was to be exercised, in the case of four of them, by the settlor and a single beneficiary of each trust acting jointly, and, in the case of one of the trusts, by the settlor and a majority of the beneficiaries named, acting jointly. In determining that the rights of the beneficiaries in the five trusts were vested by the trust instrument, and that the trust property was not subject to the estate tax, Mr. Justice Stone, speaking for the court, said (pages 346, 347, 348 of 278 U. S., 49 S. Ct. 123, 125):

"If it be assumed that the power to modify the trust was broad enough to authorize disposition of the trust property among new beneficiaries or to revoke the trusts, still it was not one vested in the settlor alone, as were the reserved powers in the case of the two trusts. He could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest, and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

"Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. *He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete.* (Italics ours.) The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased *and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to the tax.* (Italics ours.)

"But the question much pressed upon us remains whether, the donor having parted both with the possession and his entire beneficial interest in the property when the trust was created, the mere passing of possession or enjoyment of the trust fund from the life tenants to the remaindermen after the testator's death, as directed, and after the enactment of the statute, is included within its taxing provisions. * * *

"One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result

and we think it is wanting in the present statute. * * *

"In the light of the general purpose of the statute and the language of section 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trusts or interests in a trust intended to be reached by the phrase in section 402 (c) 'to take effect in possession or enjoyment at or after his death,' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under section 401. That doubt must be resolved in favor of the taxpayer."

In May et al., Executors v. Heiner, supra, 281 U. S. 238, 243, 50 S. Ct. 286, 287, 74 L. Ed. 826, 67 A. L. R. 1244, the court considered whether Mrs. May's estate was liable for estate taxes on property conveyed by her in 1917 to trustees, to pay the income to her husband for life, then to Mrs. May during her lifetime, with remainder to her four children. The taxes were imposed under section 402 (c) of the 1918 Act (40 Stat. 1097). The Supreme Court held that whether Mrs. May predeceased her husband was of no consequence, since "at the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event." The court held that the executors were entitled to a refund of the tax.

Coolidge et al., Trustees v. Long, Commissioner of Corporations & Taxation of Massachusetts, 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562, involved a trust deed which had previously been considered by the court in Nichols v. Coolidge et al., supra, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. By this trust deed a large amount of property had been transferred from the settlors to trustees. Income from the trust was to be paid to the settlors during their lives, according to the proportion in which each contributed to the trust, and the entire income was to go to the survivor, and upon his or her death the principal was to be divided equally among the five sons of the settlors. It was provided that if any of the sons predeceased the survivor of the settlors, his share should go to those entitled to take under the statutes of distribution in force at the time of the death of the survivor. No power of revocation, modification, or termination of the trust existed prior to the death of the survivor of the settlors. All of the five sons eventually survived the settlors, one of whom died in January, 1921, and the other on November 10, 1925. Excise taxes were assessed under the Massachusetts statute, effective subsequent to January 1, 1921, which provided that: "All property within the jurisdiction of the commonwealth * * * which shall pass by * * * deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth * * * made or intended to take effect in possession or enjoyment after his [grantor's] death * * * to any person, absolutely or in trust, * * * shall be subject to a tax. * * *" G. L. Mass. c. 65, § 1. This statute was made applicable only to property or interests passing or accruing upon the death of persons dying on or after May 4, 1920. The Massachusetts Supreme Court had sustained the exaction of the tax upon the theory that the possession or enjoyment upon the death of the survivor of the settlors was taxable under the statute enacted after the creation of the trust. The Supreme Court said (pages 597, 598 of 282 U. S., 51 S. Ct. 306, 309): "By the deed of each grantor one-fifth of the remainder was immediately vested in each of the sons, subject to be divested only by his death before the death of the survivor of the settlors. It was a grant in præsenti, to be possessed and enjoyed by the sons upon the death of such survivor. * * * The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment. The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. Coolidge v. Loring, supra, 235 Mass. 220, 223, 126 N. E. 276. Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. Knowlton v. Moore, 178 U. S. 41, 56, 20 S. Ct. 747, 44 L. Ed. 969. Nothing moved from her or him or from the estates of either when she or he died. There was no transmission then. *The rights of the remaindermen, including possession and enjoyment upon the termination of the trusts, were derived solely from the deeds. The situation would have been precisely the same if the pos-*

*sibility of divestment had been made to cease upon the death of a third person instead of upon the death of the survivor of the settlors."* (Italics ours.)

On page 599 of 282 U. S., 51 S. Ct. 306, 310, the opinion continues: "No act of Congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment."

And on pages 605 and 606 of 282 U. S., 51 S. Ct. 306, 312, the court says in conclusion: "We conclude that the succession was complete when the trust deeds of Mr. and Mrs. Coolidge took effect, and that the enforcement of the statute imposing the excise in question would be repugnant to the contract clause of the Constitution and the due process clause of the Fourteenth Amendment. * * *"

Mr. Justice Roberts, in an opinion concurred in by Mr. Justice Holmes, Mr. Justice Brandeis, and Mr. Justice Stone, dissented upon the ground that the Massachusetts statute sought to tax the privilege to succeed and enjoy, rather than the privilege to transfer, and that such privilege of succession was not fully exercised until after the death of the surviving settlor, when the taxing statute was in force. On page 631 of 282 U. S., 51 S. Ct. 306, 322, the following language is found in the dissenting opinion: "Of course the test to be applied in cases arising under the federal estate tax law is whether the transferor has parted with every vestige of control over the beneficial enjoyment and possession of the property, and not whether the beneficiary has received it. Nichols v. Coolidge (274 U. S. 531 [47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081]) dealt, under the federal estate tax law, with the same trust involved in this case, and the inquiry there necessarily was whether prior to the passage of the estate tax act the grantors had so fully divested themselves of all right of control and enjoyment of the property that nothing remained to pass out of them at death. The facts were held to make an affirmative answer imperative. Here, on the other hand, we inquire, not whether the grantor has parted with title, control and enjoyment, but whether the grantee has fully acquired them prior to the passage of the law."

The case of Burnet v. Northern Trust Co., Executor, 283 U. S. 782, 51 S. Ct. 342, 75 L. Ed. 1412, involved a tax imposed under section 402 (c) of the Revenue Act of 1921 (42 Stat. 278). The trust deed there involved provided that the trustee should pay the entire net income to the settlor for life; that after her death the trustee was to pay such income equally to her four children for life; that, upon the death of a child leaving lawful issue, the share of such child should be paid to his or her lawful issue per stirpes until the period of distribution. The distribution date was fixed. The Circuit Court of Appeals for the Seventh Circuit (41 F.(2d) 732) held that the transfer was not taxable, notwithstanding the income was payable to the settlor for life; and the Supreme Court affirmed that decision on the authority of May v. Heiner, supra, in a per curiam opinion.

Morsman, Administrator v. Burnet, 283 U. S. 783, 51 S. Ct. 343, 75 L. Ed. 1412, involved a tax imposed under section 302 (c) of the 1924 Revenue Act, 26 USCA § 1094 note (which is, in substance, the same as the section here under consideration). The Supreme Court, in a per curiam opinion, based on May v. Heiner, supra, reversed a decision of this court (44 F.(2d) 902) which held that the value of a trust estate set up by the decedent in 1922 was properly included in the gross estate where the settlor had reserved the income therefrom to himself for life.

McCormick et al., Executors v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413, involved a tax imposed under section 402 (c) of the Revenue Act of 1921 (42 Stat. 278). A decision of the Seventh Circuit [43 F.(2d) 277] that a transfer under a trust agreement executed in 1918, providing for its termination upon the election of the settlor and one of the three beneficiaries, and for the reversion of the trust estate to the settlor if she survived the beneficiaries, was taxable as a transfer intended to take effect in possession or enjoyment at or after death, was reversed on the authority of May v. Heiner, supra.

In Burnet v. Guggenheim, 288 U. S. 280, 53 S. Ct. 369, 77 L. Ed. 748, it was held that revocable deeds of trust made in 1917 became taxable as gifts in 1925, when the power of revocation was canceled, because that was the time when there was a change of economic benefits.

In Helvering v. Duke et al., 290 U. S. 591, 54 S. Ct. 95, 78 L. Ed. 521, the Supreme Court affirmed, without opinion, upon an equal division of the court (Mr. Chief Justice Hughes having taken no part) a de-

cision of the United States Circuit Court of Appeals for the Third Circuit [62 F.(2d) 1057] holding transfers of property conveyed in two trusts not taxable as intended to take effect in possession or enjoyment at or after death, within section 302 (c) of the 1924 Act (26 USCA § 1094 note). In both of these trusts the settlor in 1917 conveyed to himself as trustee, for the benefit of his minor daughter and her descendants, the personal property described in the trust instruments. The instruments also provided for successor trustees. The settlor reserved no power to alter or revoke, and the trust property was to revert to him only in the event that the beneficiary died prior to his death. The settlor, as trustee, had full power to manage the trust property. Provision was made for the termination of the trusts after the settlor's death, and the transfer of parts of the corpus of the trust to the beneficiary as she reached certain ages. The settlor died in 1925. The Board of Tax Appeals, in its decision (23 B. T. A. 1104), which was affirmed by the Third Circuit [62 F.(2d) 1057] held that the trust agreements were the generating sources of title, and that nothing passed from the settlor at death, notwithstanding that he held the property himself as trustee and that there was a possibility during his lifetime of a reversion of the fee to him in case the beneficiary should predecease him.

Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996, upon which the appellee strongly relies, dealt with a transfer by deed, in which the grantor had conveyed a life estate in real property to his wife, expressly reserving to himself the fee, which was to "remain vested in said grantor" in the event that the grantee "shall die prior to the decease of said grantor," but was to pass to the grantee if she survived him. In holding that the transfer was taxable under section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097), as a transfer intended to take effect in possession or enjoyment at or after death of the grantor, the court said (page 234 of 283 U. S., 51 S. Ct. 398, 399): "It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed."

The appellee is of the opinion that the case with which we are concerned falls within the rule of the Klein Case, upon the theory that Mr. Guy transferred to himself, as trustee, only a life interest in the corpus of each of the four trusts, for the purpose of providing income for his children, and that the provisions in the trust instruments that the beneficiaries should take the property only in the event they survived the settlor, had the effect of preventing the passage of title to them until the death of the settlor. This same contention was made in the case of Helvering v. St. Louis Union Trust Company et al. (C. C. A. 8) 75 F.(2d) 416, 418, opinion filed January 17, 1935. We said in that case: "Had the decedent in the case at bar retained the legal title to all of the trust property, and had he provided that, upon his death, and not before, such title should pass to his daughter or to others or to a trustee for her or their benefit, the situation would be comparable to that in the Klein Case; but here the decedent parted with the legal title to the trust property and to all beneficial interest therein during the life of the trust, and did so irrevocably. It was only in the case of the happening of certain contingencies over which he had no control that the property would revert to him. One of these contingencies was the death of his daughter prior to his death, while the trust still continued; and the second was a termination by the trustee of the trust during the lifetime of the grantor. Neither of these contingencies occurred, and there was, during the decedent's lifetime, nothing more than a possibility that either would occur. In no proper sense was there an enlargement of the interests of the beneficiaries of the trust resulting from the death of the decedent. That event merely changed the possibility that the property would revert to him into an impossibility. The distinction between the Klein Case and this case, as we see it, is that in the former the legal title was retained by the grantor and passed to the grantee with the grantor's death, while here the grantor parted with the title and all beneficial interest in the property, and retained no right with respect thereto that would pass to anyone as the result of his death. In the Klein Case death was the generating source of title, while in this case the trust instrument was the source of title, and death merely destroyed a possibility that the trust property might revert to the grantor."

It will be noted that in Reinecke v. Northern Trust Co., supra, 278 U. S. 339, pages 347, 348, 49 S. Ct. 123, 125, 73 L.

Ed. 410, 66 A. L. R. 397, the opinion in which was written by Mr. Justice Stone, it was said: "One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death."

Hence, decisions relating to gifts inter vivos, even though such gifts are not in the form of trusts, are pertinent.

In Edson v. Lucas (C. C. A. 8) 40 F.(2d) 398, it appeared that Mrs. Edson had given to her daughter, Mrs. Pratt, certain stocks, with provision that, if Mrs. Edson or her husband survived Mrs. Pratt, the securities should revert. It was sought to tax a gain which resulted from the sale of the stock transferred to Mrs. Pratt, as income of Mrs. Edson. We held that, notwithstanding the provision that the stock was to revert to Mrs. Edson in case of Mrs. Pratt's death, the gift was complete; and in that connection said (page 405 of 40 F.(2d): "It is safe to say that, where there is a complete transfer of the legal title to the subject-matter of the gift, together with some equitable or beneficial present interest, to the donee, without power of revocation in the donor, coupled with the intentional delivery of complete possession, dominion and control over the gift, the gift is not invalid because of conditions imposed by the donor which are not inconsistent with the immediate vesting of such legal title in the donee."

We referred in that case to People's Trust Co. v. Dickson, 126 Misc. 580, 214 N. Y. S. 73, which held that a provision that a gift should be subject to defeasance by the death of the donee before that of the donor would not defeat the gift. It appeared, however, in that case that the donor had transferred merely the possession of 90 shares of Bethlehem Steel common stock, assigned in blank, to his wife, on condition that she hold the stock until after his death, and that it should then become her personal property; It was held that this negatived any intent to make an immediate gift of this stock. The Dickson Case, we think, is analogous to the Klein Case, where Mrs. Klein received, in effect, the possession and enjoyment of real estate, the title to which remained in her husband during his lifetime and passed to her only upon his death. On the other hand, the case of Edson v. Lucas is, in our opinion, analogous to the case at bar, as is also the case of Flint v. Ruthrauff, 26 App. Div. 624, 53 N. Y. S. 206, affirmed 163 N. Y. 588, 57 N. E. 1109. There it appeared that a gift of certain bonds was made by Miss Flint to Miss Ruthrauff, with the understanding or qualification that Miss Flint should have some of the income therefrom; and that the gift should be entirely defeated in case Miss Ruthrauff's death occurred before the death of Miss Flint. It was held that the gift was a valid one, notwithstanding the provision for defeasance.

We are advised by the opinion of Mr. Justice Stone in the case of Reinecke v. Northern Trust Co., supra, that the fact that a settlor makes himself a trustee under the trust instrument with the power of management of the trust, would not make the transfer incomplete. We are advised by the opinion of Mr. Justice Holmes, in the case of Shukert v. Allen, supra, 273 U. S. 545, 47 S. Ct. 461, 71 L. Ed. 764, 49 A. L. R. 855, that the fact that income of a trust is to be accumulated for the benefit of the beneficiaries therein named, instead of being handed to them to spend, does not make the trust one intended to take effect in possession or enjoyment at or after the grantor's death. We are advised by the dissenting opinion of Mr. Justice Roberts in Coolidge et al., Trustees v. Long, Commissioner of Corporations & Taxation of Massachusetts, supra, 282 U. S. 582, 631, 51 S. Ct. 306, 322, 75 L. Ed. 562, concurred in by three other justices and in no way disputed by the majority opinion, that "the test to be applied in cases arising under the federal estate tax law is whether the transferor has parted with every vestige of control over the beneficial enjoyment and possession of the property, *and not whether the beneficiary has received it.*" Under the circumstances, we cannot hold that the fact that Mr. Guy made himself a trustee with power to manage the trust property or that he reserved the right to control the amount of income which should be paid to the beneficiaries during the continuance of the trust, or that the beneficiaries were to receive the trust property at his death, prevented the transfer from becoming complete at the time the trust instruments were executed.

It seems, then, that the question as to whether the transfer was one to take effect in possession or enjoyment at or after Mr.

Guy's death depends entirely upon whether by the trust instruments he, as an individual, parted with every vestige of control over the beneficial enjoyment and possession of the property conveyed. In order to sustain the conclusion of the lower court that he, as an individual, retained some vestige of control over the beneficial enjoyment and possession of the trust property until his death, we would be obliged to point out what it was that he retained. It is clear that the legal title to the trust property passed from him upon the execution of the trust instruments. The possession of the trust property which he had formerly held as an individual he thereafter held as a trustee. The income from the trust property was no longer his. He was obliged either to pay the income over to the beneficiaries or to accumulate it for them. The powers with which he clothed himself as trustee were not to be exercised by him for his own benefit, but only for the benefit of those for whom he had constituted himself trustee. The only interest, then, which he retained was the right to have the trust property revert to him in case the beneficiaries should predecease him. That right to the reversion was not an interest which passed to the beneficiaries as the result of Mr. Guy's death. It was merely an interest which was obliterated by his death. It passed not to the living, but entirely out of existence. So far as we can discern, the rights of the beneficiaries to the trust property were complete at the time the declarations of trust were executed. Thereafter, Mr. Guy as an individual had no interest in the property then or thereafter held by him as trustee, except the right to a reversion on certain conditions over which he had no control. Hence, nothing could have passed from him to the beneficiaries of the trust at the time of his death, although that event, by virtue of the terms of the declarations of trust, gave them the rights with respect to his property which the declarations of trust provided they should have if they survived him.

■ It is true, as the appellee says, that: "Taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed— the actual benefit for which the tax is paid." Burnet v. Guggenheim, 288 U. S. 280, 283, 53 S. Ct. 369, 77 L. Ed. 748; Corliss v. Bowers, 281 U. S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916. However, in the case of estate taxes, the actual benefit for which

the tax is paid must be a benefit which passes from the dead to the living, and where a complete transfer is made prior to death, the transferor certainly retains no "actual benefit" justifying the imposition of the tax.

The appellee also contends that the cases which we have referred to can be distinguished from the case at bar on the ground that the transfers in those cases were intended to take effect in possession or enjoyment after death, whereas here they were intended to take effect in possession or enjoyment at death. The statute, however, deals with transfers intended to take effect in possession or enjoyment "at *or* after" death. This precludes the drawing of any distinctions between trusts which terminate at death and those which terminate after death, where the transfers are complete and irrevocable during the life of the settlor.

■ We reach the conclusion, therefore, that the property transferred under these declarations of trust was not a part of the estate of Mr. Guy at the time of his death, unless the transfers were made in contemplation of death.

The appellee's theory is that the actual transfer of the corpus of these trusts to the beneficiaries was accomplished by the death of the settlor, and that any motive he may have had in transferring the property to himself as trustee, to distribute the income to his children, is disconnected with the ultimate transfer, which was subject to the presumption that it was made in contemplation of death, under section 302 (c), Revenue Act 1926 (26 USCA § 1094 (c). Since we have held that the transfer was complete at the time of the execution of the trust instruments, more than seven years prior to the death of the settlor, that theory is, of course, untenable, and the statutory presumption respecting transfers made within two years prior to death is not applicable.

■ Whether a transfer is made in contemplation of death must obviously be determined from the facts of each particular case.

In Milliken et al., Executors, v. United States, 283 U. S. 15, page 23, 51 S. Ct. 324, 327, 75 L. Ed. 809, the court said, with reference to gifts made in contemplation of death: "It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dis-

positions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death."

In United States v. Wells et al., Executors, 283 U. S. 102, 51. S. Ct. 446, 75 L. Ed. 867, the Supreme Court affirmed a decision of the Court of Claims, 39 F.(2d) 998, 69 Ct. Cl. 485, holding that certain gifts were not made in contemplation of death. The gifts were to the decedent's wife and children at dates ranging from approximately seven months to almost two years prior to his decease. The evidence showed that, during this period, the decedent was undergoing medical treatment, but was in a fair state of health and had no reason to expect death in the near future. In the opinion by Mr. Chief Justice Hughes, the following language is used (pages 117, 118, 119, of 283 U. S., 51 S. Ct. 446, 451):

"Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. As a condition of body and mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership, is most likely to prompt such a disposition to those who are deemed to be the proper objects of his bounty, the evidence of the existence or nonexistence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death. * * *

"As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease.

Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'

"If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

"It is apparent that there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

In Willcuts v. Stoltze (C. C. A. 8) 73 F.(2d) 868, Judge Booth has carefully reviewed many cases dealing with the subject. That case held that a finding that gifts made to the testator's son, for the declared purpose of reducing the testator's income taxes and giving the son a real working interest in the testator's business, and gifts to the testator's wife's sister soon aft-

er the wife's death, pursuant to a formerly expressed desire to make the sister a gift, were not made in contemplation of death within section 302 (c) of the Revenue Act of 1926, was justified by the evidence.

In the case of Flannery v. Willcuts (C. C. A. 8) 25 F.(2d) 951, this court set aside a finding of the lower court that transfers in trust made by Mrs. James J. Hill shortly prior to her death were made in contemplation of death, on the ground that there was no substantial evidence to sustain such finding, although Mrs. Hill was, at the time the transfers were made, well advanced in years and not in good health.

According to the evidence, Mr. Guy, in making these trusts, was actuated by two motives: (1) To make his children independent; (2) to avoid high surtaxes upon his income. Both of these motives were intimately associated with life. United States v. Wells et al., Executors, supra, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867; Willcuts v. Stoltze (C. C. A.) supra, 73 F.(2d) 868. Evidence that Mr. Guy was in any way influenced in what he did by the thought of death is entirely lacking.

The suggestion of the appellee, that the determination by the Commissioner that the transfers were made in contemplation of death would support the lower court's finding to that effect, is obviously unsound. Any presumption as to the correctness of the Commissioner's determination is a rebuttable one and would only support such a finding in the absence of any substantial evidence to the contrary. Willcuts v. Stoltze (C. C. A.) supra, 73 F.(2d) 868, 872; Flannery v. Willcuts (C. C. A. 8) supra, 25 F.(2d) 951; Brown et al. v. Commissioner (C. C. A. 10) 74 F.(2d) 281; Lippincott et al. v. Commissioner (C. C. A. 3) 72 F.(2d) 788. Our conclusion that there is no substantial evidence that Mr. Guy made these transfers in contemplation of death finds strong support in the two recent cases last cited.

Because of the feeling of uncertainty occasioned by the equal division of the justices of the Supreme Court in Helvering v. Duke, supra, we have in this opinion reviewed and quoted from the authorities at far greater length than would otherwise be justified. We must, of course, follow the applicable law as it has thus far been established. If there are to be modifications or changes in the law relative to the taxa-

tion of such transfers as are here involved, this court is not the proper tribunal to make them.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.